RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0109P (6th Cir.)
File Name: 03a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILEY HUTCHERSON;
WESTERN TENNESSEE
ENTERPRISES, INC.; and
HUTCHERSON METALS, INC.,
    *Plaintiffs-Appellants,*

       *v.*

LAUDERDALE COUNTY,
TENNESSEE; LAUDERDALE
COUNTY COMMISSION;
LAUDERDALE COUNTY
REGIONAL PLANNING
COMMISSION; ROZELL
CRINER; DON AMMONS;
ROBERT FLAGG; DENNIS
MCCASLIN; and DOUG
COLLINS,
    *Defendants-Appellees.*

No. 00-5686

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-03046—Jerome Turner, District Judge.

Argued: August 8, 2001

---

Decided and Filed: April 9, 2003

Before: MOORE and COLE, Circuit Judges; ROSEN,
District Judge.[*]

---

### COUNSEL

**ARGUED:** Patrick W. Rogers, RAINEY, KIZER, BUTLER, REVIERE & BELL, Jackson, Tennessee, for Appellants. Michael E. Keeney, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellee. **ON BRIEF:** Patrick W. Rogers, Jerry D. Kizer, Jr., RAINEY, KIZER, BUTLER, REVIERE & BELL, Jackson, Tennessee, for Appellants. Michael E. Keeney, Kemper B. Durand, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellee.

---

### OPINION

---

   R. GUY COLE, JR., Circuit Judge. This action stems from the efforts of a commercial landfill operator to win approval for its proposed landfill expansion after a change in Tennessee law required the expansion of pre-existing landfills to comply with new zoning requirements. Plaintiffs-Appellants Wiley Hutcherson ("Hutcherson"), the property owner, Hutcherson Metals, Inc. ("Hutcherson Metals"), and Western Tennessee Enterprises, Inc. ("WTE"), argue that Hutcherson Scrap Company, Inc. ("Hutcherson Scrap"), which is not a party to this lawsuit, was the subject of differential treatment and arbitrary action by Defendants-

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

Appellees Lauderdale County, Tennessee; Lauderdale County Commission (the "County Commission"); Lauderdale County Regional Planning Commission (the "Planning Commission"); Rozell Criner, former Lauderdale County Executive; Don Ammons, Robert Flagg, and Dennis McCaslin, County Commission and Planning Commission members between July 1990 and November 1992; and Doug Collins, Planning Commission member during all relevant periods of this dispute. Plaintiffs now appeal the district court's grant of Defendants' Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings, which dismissed Plaintiffs' action in its entirety.

This appeal presents four issues: (1) whether the instant action seeks to raise claims and issues that could have been litigated in a prior state proceeding and thus properly should be dismissed pursuant to the *Rooker-Feldman* doctrine; (2) whether Plaintiffs' complaint sets forth sufficient facts to support a claim that Defendants' denial of Plaintiffs' rezoning request was so arbitrary and capricious as to violate substantive due process; (3) whether Plaintiffs' complaint sets forth sufficient facts to support a claim that, although Plaintiffs' landfill and the county-run landfill were similarly situated, their differential treatment with respect to rezoning was not rationally related to a legitimate state purpose; and, therefore, was a violation of the Equal Protection clause of the Constitution; and (4) whether the district court properly found that Defendants were not entitled to absolute immunity for actions taken in their legislative capacities.

We conclude that Plaintiffs are barred under the doctrine of res judicata from raising the foregoing claims because they could have been litigated in the prior state proceeding. Accordingly, we **AFFIRM** the district court's dismissal of the instant complaint.

## I. BACKGROUND

### A. Factual Background

On December 10, 1984, the County Commission adopted the Lauderdale County Zoning Resolution, which provided that a sanitary landfill was a "use permitted on appeal" in farming-agricultural-residential ("FAR") and industrial ("I") districts. To obtain a "use permitted on appeal" designation, a landowner seeking to operate a landfill was required to submit an application to the Lauderdale County Board of Zoning Appeals ("Board") for approval. At the time this zoning resolution was enacted, there existed only one landfill in Lauderdale County, a FAR-zoned county-run landfill.

The State of Tennessee licensed Hutcherson Scrap in November 1986 for operation of a sanitary landfill on a small portion of Hutcherson Scrap's 322-acre "Love Farm" property in Lauderdale County (the "County"). The property, jointly owned by Hutcherson, WTE, and Hutcherson Scrap, was (and remains) FAR-zoned. In January 1987, the Board authorized Hutcherson Scrap to operate a sanitary landfill on a 9.8-acre parcel of Love Farm for use by Plaintiffs as a disposal site for certain by-products of Plaintiffs' private scrap-metal recycling program. Thereafter, Hutcherson Scrap conveyed by deed this parcel to Landfill, Inc., a closely-held corporation owned by Hutcherson, on which it began operation of a sanitary landfill.

Between June 1989 and February 1990, the County purchased one hundred acres for the expansion of the County landfill. Plaintiffs allege that the County never submitted its expansion plan for approval to the Board as a "use permitted on appeal" despite the fact that the zoning resolution made no distinction between private and public landfills.

In 1990, Hutcherson Scrap, in coordination with WTE, set in motion efforts to obtain state approval for its construction of a Class I sanitary landfill on 184 acres of Love Farm enveloping Hutcherson Scrap's pre-existing landfill.

Thereafter, in October 1990, the Planning Commission became aware of Hutcherson Scrap's interest in expanding its landfill. Plaintiffs maintain that the Planning Commission began discussions at this time to remove landfills from FAR-zoned areas such as Love Farm in an effort to stymie Hutcherson Scrap's landfill expansion. The Planning Commission, according to Plaintiffs, continued these discussions over the course of the next several months and sought to enact an amendment to the zoning resolution with no other purpose than to thwart Hutcherson Scrap's expansion plans.

In May 1991, the Planning Commission began consideration of an amendment to the zoning resolution to provide for the creation of two types of industrial districts: light industrial ("I-1") and heavy industrial ("I-2"). It also discussed possible sites for the newly proposed I-2 district. State planner Tim Roach recommended that the Planning Commission redesignate the County landfill and Hutcherson Scrap's landfill as I-2 compliant. The Planning Commission rejected Roach's suggestion, however, and recommended to the County Commission that it rezone only the County landfill as I-2. Plaintiffs submit that the Planning Commission's differential treatment in this regard was motivated by its desire to prevent the approval of Hutcherson Scrap's proposed landfill expansion. In June 1991, the Planning Commission voted to recommend the creation of I-1 and I-2 industrial districts. Although the Planning Commission's vote had no binding effect--only the County Commission can amend a zoning resolution--its recommendation was required by state law as a precondition for future County Commission action.

Later that year, in August, the County Commission, pursuant to the Planning Commission's recommendation, amended the zoning resolution ("1991 Amendment") and effected the following changes: (1) the then-existing single industrial designation was expanded to include I-1 and I-2 activity; (2) landfills could no longer be sited in FAR zones,

but were thenceforth to be restricted to I-2-designated areas;[1] (3) the County landfill was rezoned I-2 "to insure the orderly development of land use in Lauderdale County," although Hutcherson Scrap's landfill was not; and (4) although Hutcherson Scrap could continue operation of its 9.8 acre sanitary landfill, it would be required to seek approval for any future landfill or landfill expansion either by seeking to have its property rezoned as I-2 or by seeking a permit from the Board.

Prior to the adoption of the 1991 Amendment, a Notice of Public Hearing was published announcing a hearing scheduled for August 12, 1991. The Notice provided in relevant part:

The hearing is to receive public input into proposed amendments to the Lauderdale County Zoning Resolution and zoning map summarized as follows:

1) Consideration of a Resolution entitled "A Resolution to Amend the Lauderdale County Zoning Resolution, Provisions Governing Industrial Districts and the Lauderdale County Zoning Map." The Resolution creates two (2) industrial districts for Lauderdale County: Light Industrial (I-1) and Restricted Industrial (I-2). Further, specific definitions of, and restrictions on, landfills, commercial feed lots and salvage yards are created and requirements for site plans established. Specific uses and requirements listed in the Resolution may be viewed in the office of the Lauderdale County Executive.

---

[1] Plaintiffs submit that the 1991 Amendment did not remove sanitary landfills as a "use permitted on appeal" in FAR-zoned areas. Indeed, they contend, the County Commission could not have so amended the zoning resolution, because such action had never been recommended by the Planning Commission, as required by Tennessee law.

2) The amendment of the Lauderdale County Zoning Map to designate it all existing I (industrial) zoning districts as I-1 (light industrial) and the designation of the existing Lauderdale County Landfill as I-2 (restricted industrial).

Plaintiffs contend that the Notice provided "no explanation or discussion concerning removing landfills as a use permitted on appeal from the FAR zoning district."

On December 9, 1991, in what Plaintiffs maintain was part of the County Commission's continuing effort to frustrate Hutcherson Scrap's expansion plans, the County Commission approved a resolution, known as the "Jackson Law," that prohibited the new construction of private commercial landfills in the unincorporated areas of any county without prior approval of the county legislative body. The passage of this resolution resulted in the termination of further action by the State of Tennessee, Division of Solid Waste Management ("DSWM"), on Hutcherson Scrap's then-pending application for an expansion of its landfill. When the DSWM completed its review of Hutcherson Scrap's application, a representative of Hutcherson Scrap appeared before the County Commission, seeking approval of its proposed landfill expansion. The County Commission refused Hutcherson Scrap's request, noting that it first was required to submit a request with the Planning Commission before the County Commission would consider any expansion plan.

On March 6, 1992, William Griggs appeared before the Planning Commission on Hutcherson Scrap's behalf concerning its proposed landfill application. The Planning Commission informed him that Hutcherson Scrap would have to file an application to rezone the proposed landfill expansion area to I-2 before the Planning Commission would make any recommendation to the County Commission. Plaintiffs note that at the time the Planning Commission provided this information, sanitary landfills, such as the one operated by Hutcherson Scrap, were designated as a "use

permitted on appeal" in FAR-zoned areas. Plaintiffs nevertheless submitted an application to rezone 184 acres of "Love Farm" from FAR to I-2, as instructed by the Planning Commission. The Planning Commission recommended that the County Commission deny Hutcherson Scrap's requested rezoning on April 24, 1992, and referred all matters relating to Plaintiffs' application to the DSWM.

In May 1992, the County Commission, at a public hearing on Hutcherson Scrap's rezoning request, invited public comment from Lauderdale County citizens. Later that year, in October 1992, the County Commission held another public hearing concerning a second proposed amendment to the zoning resolution ("1992 Amendment"). According to Plaintiffs, the public notice announcing this hearing contained no indication that landfill designation would be on the agenda. The County Commission passed the 1992 Amendment, which eliminated sanitary landfills as a "use permitted on appeal" in FAR-zoned areas. Plaintiffs contend that Defendants never notified them prior to the 1992 Amendment's adoption that Hutcherson Scrap had been misinformed by the Planning Commission and that it was not required to have its property rezoned to I-2 as a precondition to approval of its application.

Although the DSWM approved Hutcherson Scrap's proposed landfill expansion on November 14, 1994, Plaintiffs' expansion efforts could not move forward until the County Commission rezoned Hutcherson Scrap's property. At the urging of Rozell Criner, the Lauderdale County Executive, Hutcherson Scrap resubmitted to the Planning Commission a request to rezone 184 acres of Love Farm from FAR to I-2. On January 27, 1995, the Planning Commission again voted to recommend the denial of Hutcherson Scrap's rezoning request. The County Commission scheduled a public hearing and vote on Hutcherson Scrap's request for March 13, 1995. That hearing was postponed, however, when several County Commission members were indicted for and later convicted of soliciting bribes from Hutcherson in

exchange for favorable votes on Hutcherson Scrap's rezoning request.

At the rescheduled hearing, held on October 9, 1995, Hutcherson Scrap was permitted to present evidence in support of the rezoning petition. Several persons present at the hearing opposed the approval of Hutcherson Scrap's application on various grounds. One such concern was that rezoning the area proposed by Hutcherson Scrap from FAR to I-2 effectively would place a commercial district in a residential and agricultural region unequipped with necessary arterial highways, roads, and utilities; and, more generally, that the new industrial district would disrupt the orderly development of Lauderdale County. The County Commission voted to deny Hutcherson Scrap's rezoning request, a decision that Plaintiffs maintain lacked either discussion of the pertinent issues or review of Hutcherson Scrap's evidence.

On April 19, 1996, the Planning Commission held a special meeting at which it passed a resolution recommending that landfills be eliminated as a "use permitted on appeal" in FAR-zoned areas. The County Commission voted on May 13, 1996, to pass this resolution. Plaintiffs submit that the County Commission did so without any discussion and without adequate public notice.

### B. Procedural History

### 1. State Proceedings

On December 7, 1995, Hutcherson and WTE filed a lawsuit in the Lauderdale County Chancery Court against Criner and the County Commission (collectively the "State Court Defendants"), seeking injunctive and declaratory relief and money damages for violation of their substantive due process rights. Neither Hutcherson Scrap nor Hutcherson Metals was a party to this action. The Plaintiffs later amended their complaint to eliminate their request for money damages. After the State Court Defendants' motion to dismiss for lack of subject-matter jurisdiction was denied, the action

proceeded to trial on March 9, 1998. Thereafter, on June 26, 1998, the state trial court issued a final decree in which it found that the State Court Defendants had violated Hutcherson and WTE's federal and Tennessee substantive due process and equal protection rights. It nevertheless declined to grant them injunctive relief to permit construction of the proposed landfill. The Tennessee Court of Appeals affirmed the judgment of the state trial court, and the Tennessee Supreme Court denied Hutcherson and WTE's application for leave to appeal.

On March 31, 2000, Hutcherson and WTE filed an application with the Board seeking approval for construction of its landfill as a use permitted on appeal. After a public hearing on the matter, at which Hutcherson and WTE presented their proposal and members of the public were permitted to comment, the Board voted unanimously to deny the application. On August 25, 2000, Hutcherson and WTE filed a new lawsuit in the Lauderdale County Chancery Court seeking review of the Board's decision and requesting that Chancellor Martha Brasfield vacate the Board's decision and order the Board to approve the application. On August 27, 2002, the Lauderdale County Chancery Court issued an order upholding the Board's decision. Hutcherson and WTE appealed that order to the Tennessee Court of Appeals on September 23, 2002, and that appeal remains pending.

### 2. Federal Proceedings

On September 30, 1996, Hutcherson and WTE, along with Hutcherson Metals, initiated the instant lawsuit in the United States District Court for the Western District of Tennessee pursuant to 42 U.S.C. § 1983, alleging substantive due process, procedural due process, and equal protection violations. Only the substantive due process and equal protection claims are before this Court on appeal. The facts underlying Plaintiffs' federal complaint are the same as those that form the basis of Hutcherson and WTE's state complaint. After filing their answer on October 18, 1996, Defendants

filed a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs failed to establish a violation of a constitutional right and, therefore, cannot sustain a claim under § 1983. Plaintiffs responded to this motion on June 25, 1999. After further briefing by the parties, the district court granted Defendants' motion on March 28, 2000, and entered a final judgment dismissing Plaintiffs' action on April 4, 2000. This appeal followed.

## II. DISCUSSION

### Rooker-Feldman and Res Judicata[2]

The *Rooker-Feldman* doctrine provides that inferior federal courts lack jurisdiction to review the final judgments of state courts. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Res judicata provides that federal courts must give state court judgments the same effect the rendering state court would give them. *See* 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The two doctrines "'are not coextensive,'" and *Rooker-Feldman* should be considered first since its application strips federal courts of jurisdiction and the ability to hear a res judicata, or other affirmative, defense. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). The Seventh Circuit has adopted several useful guidelines for distinguishing between these two doctrines:

---

[2] At oral argument, both parties made reference to state court proceedings involving the same or similar parties as those in the instant action. Accordingly, we invited the parties to submit supplemental briefing outlining this matter's procedural history in the state courts and discussing whether the *Rooker-Feldman* doctrine had any application to this case. As the following analysis indicates, we find the present action controlled by the doctrine of res judicata, but not the *Rooker-Feldman* doctrine.

In order to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, . . . res judicata may apply, but *Rooker-Feldman* does not. . . .

. . .

[W]e offer[] the following rough guide to determining whether *Rooker-Feldman* or res judicata should be applied to a federal plaintiff making a claim due to unhappiness with a prior state-court ruling: if the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state court, apply *Rooker-Feldman*. We stated in *Homola* [*v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995)]:

> A plaintiff who loses and tries again encounters the law of preclusion [res judicata]. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion [res judicata] but for lack of jurisdiction [*Rooker-Feldman*].

This distinction based upon state-court status as a plaintiff or defendant is a helpful shorthand, but . . . should not be understood as a per se rule.

*Garry*, 82 F.3d at 1365-67.

Looking first to *Rooker-Feldman*, we have adopted a two-part inquiry for determining whether the doctrine applies in a given case. We first determine whether the federal claim is "inextricably intertwined" with the claim asserted in the prior state court proceeding:

> Under the [*Rooker-*]*Feldman* doctrine, the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) (quoting *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990)). We next consider whether the federal claim is a "general challenge to the constitutionality of the state law applied in the state action," to which the *Rooker-Feldman* doctrine would not apply, or "a specific grievance that the law was invalidly--even unconstitutionally--applied in the plaintiff's particular case," that would raise a *Rooker-Feldman* bar. *Catz*, 142 F.3d at 293.

Plaintiffs concede that their federal complaint asserts "violations of their substantive due process and equal protection rights based upon the same essential facts as those underlying the State Case." They argue that their claims are not inextricably intertwined, however, because they are not challenging the state court's decision. Indeed, Plaintiffs agree with the state court's finding that their constitutional rights were violated. They seek, through this federal action, money damages for the constitutional violations that the state court has already found to exist. Plaintiffs argue that the relief they seek in this federal action can therefore be ordered without a finding that the state court wrongly decided the issues before it. Defendants disagree, arguing that any grant of relief would necessarily require a finding that Defendants had no rational

basis for their denial of Plaintiffs' rezoning request, that would, in essence, amount to a reversal of the Tennessee state courts' decisions.

We conclude that the *Rooker-Feldman* doctrine has no application here. Plaintiffs do not pursue a federal claim alleging injury caused by the state court, and under the *Catz* test their federal claim is not inextricably intertwined with the state-court judgment. *Catz*, 142 F.3d at 293. Applying the general guidelines the Seventh Circuit has adopted, we have here a plaintiff who is not satisfied with the results of its state court action and simply seeks a second bite at the apple in federal court – an action inappropriate for a *Rooker-Feldman* bar but barred nonetheless under the doctrine of res judicata. *Garry*, 82 F.3d at 1365-67.

The parties have not raised the issue of res judicata explicitly. Nevertheless, where a purely legal issue provides alternative grounds to uphold the judgment of the district court, we may reach the issue, provided the record permits its resolution as a matter of law. *See, e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000); *Faughender v. City of N. Olmstead*, 927 F.2d 909, 913 (6th Cir. 1991); *see also Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997) (applying this reasoning as a basis for sua sponte consideration of a collateral estoppel defense); *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992) (same as to res judicata defense). Furthermore, we have not failed to exercise our discretion to reach an issue that the parties have not briefed where it involves a "pure question of law that cries out for resolution." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000); *see also Dorris v. Absher*, 179 F.3d 420, 425-26 (6th Cir. 1999). *See generally United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 445-48 (1993) (confirming the power of appellate courts to consider an issue not raised by the parties).

Under both federal and Tennessee law, res judicata is an affirmative defense that should be raised by the defending

party. FED. R. CIV. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense."); TENN. R. CIV. P. 8.03; *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("Res judicata and collateral estoppel are affirmative defenses that must be pleaded."); *Mun. Resale Serv. Customers v. Fed. Energy Regulatory Comm'n*, 43 F.3d 1046, 1052 n.4 (6th Cir. 1995); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977); *see also Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981) (explaining that although res judicata is an affirmative defense ordinarily raised in the pleadings, it may also be asserted by motion). Defendants did not assert the res judicata affirmative defense either by amending their answer or by filing a motion after the first state action was finalized.

Courts generally lack the ability to raise an affirmative defense sua sponte. *See Haskell v. Wash. Township*, 864 F.2d 1266, 1273 (6th Cir. 1988) (noting that it is ordinarily error for a district court to raise an affirmative defense sua sponte). Nevertheless, the Supreme Court has indicated that a court may take the initiative to assert the res judicata defense sua sponte in "special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000). "This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* This Court has recognized that it might be appropriate to raise the res judicata defense sua sponte in certain circumstances. *See, e.g., Holloway Constr. Co. v. United States Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) (affirming a district court's sua sponte assertion of res judicata where the district court had decided the original case and adding that "a district court may invoke the doctrine of res judicata in the interests of, *inter alia*, the promotion of judicial economy"); *see also Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003); *Agg v. Flanagan*, 855 F.2d 336, 344 (6th Cir. 1988) (Contie, J., dissenting )

(noting that several courts sua sponte have raised the issue of res judicata because "in appropriate cases [this practice] 'insures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits' . . . [and] [f]or these reasons, courts raise res judicata sua sponte despite the technical pleading requirements of Rule 8(c)").

The circumstances of this case justify our recognizing the defense of res judicata. The defense was not available to Defendants prior to their filing their motion for judgment on the pleadings. Defendants did, however, raise the issue of duplicative proceedings, putting Plaintiffs on notice of a potential res judicata defense. According to Defendants' answer,

> [I]t is admitted that plaintiffs filed a complaint for declaratory judgment and damages in the Chancery Court of Lauderdale County, Tennessee, on December 7, 1995. It is affirmatively shown that the complaint filed in the Chancery Court is still pending in that Court and is between the same parties, and addresses essentially the same issues, including due process under the United States Constitution, as are presented in this lawsuit.

Defendants also filed a motion asking the district court to dismiss the suit or abstain pending the outcome of the state court proceedings. Furthermore, the Supreme Court has noted that the purpose of requiring that certain defenses, such as res judicata, be affirmatively pled is to "give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." *Blonder-Tongue Labs.*, 402 U.S. at 350. Plaintiffs were made aware of the issue of duplicative proceedings in the district court, and both parties had the opportunity to identify dissimilarities between the state and federal suits before the district court, in response to Defendants' motion for abstention, and through the supplemental briefing submitted to this Court.

Res judicata requires us to give the same effect to the Tennessee state court judgment as would another Tennessee state court.[3] 28 U.S.C. § 1738; *Marrese*, 470 U.S. at 380. The state of Tennessee bars under res judicata "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). Four elements must be established before res judicata can be asserted as a defense: (1) the underlying judgment must have been rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1990) (citing *Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)).

Like the case before us, *Clark* involved a plaintiff who chose to split his cause of action and seek recovery on only part of it, saving alternate claims against the same defendant for later litigation. The court noted that the splitting of a cause of action "'operates as an estoppel after judgment,'"-- it "is not fatal to the first action," but precludes the second under res judicata. *Clark*, 586 S.W.2d at 827; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1982) (precluding claim splitting unless "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"). Plaintiffs in this case sought to split their cause of action – litigating part in state

---

[3] Res judicata refers only to the preclusion of claims that have once been litigated or could have been litigated -- also known as claim preclusion, merger, or bar. A second doctrine, the preclusion of issues that have once been decided, is called collateral estoppel. However, the use of the term "res judicata" as a "general term referring to all of the ways in which one judgment will have a binding effect on another" has been endorsed. *See* CHARLES ALAN WRIGHT, THE LAW OF FEDERAL COURTS § 100A, at 722-23(5th ed. 1994); BLACK'S LAW DICTIONARY 1312 (7th ed. 1999). Because the Tennessee cases defining "res judicata" also use the term in the more general sense, we will do the same for the purposes of this appeal.

court, and part in federal court. They may not have lost on all their claims in the state court, but essentially they are "trying again" on their constitutional claims for which they are not satisfied with the remedy. *See Homola*, 59 F.3d at 650. Plaintiffs also have sought equitable relief in state court, reserving the issue of damages for later litigation against the same defendant. They prefer to "ignore rather than upset the judgment of the state tribunal." *Id.* In doing so, they meet all four elements of the Tennessee test for the res judicata bar of a second suit. *See Collins*, 916 S.W.2d at 945.

Res judicata thus precludes our review of the issues raised in this action by Hutcherson and WTE. Both Hutcherson and WTE were parties to the state court action, and both admit that the factual basis for the instant federal action is the same as that underlying the state court proceeding. We find unpersuasive their effort to distinguish the federal and state actions by arguing that they now seek money damages in the federal action, which were not sought in the state action, for a constitutional violation that the state trial court has already found to exist. The relevant inquiry focuses on whether the federal action would require us to revisit issues and claims that were litigated or could have been litigated in the state court. The issue of money damages was not litigated in the state court proceedings, but it clearly could have been. Plaintiffs chose to abandon this claim at the state court level, hoping to raise it in federal court. Tennessee law prohibits parties from splitting a cause of action in such a manner. *See Clark*, 586 S.W.2d at 827. Plaintiffs are therefore estopped from bringing this action in federal court.

Hutcherson Metals, unlike Hutcherson and WTE, was not a party to the state court action, and therefore is not seeking relief in the federal action in disregard of the judgment of the Tennessee state court as are Hutcherson and WTE. *Clark*, 586 S.W.2d at 826; *Homola*, 59 F.3d at 650. However, res judicata under Tennessee law extends not only to parties of a prior action, but also those with an "identity of interest." *Tennessee ex. rel. Cihlar v. Crawford*, 39 S.W.3d 172, 180

(Tenn. Ct. App. 2000); *see also Cotton v. Underwood*, 442 S.W.2d 632, 635 (Tenn. 1969). Privity relates to the subject matter of the litigation, not simply to the relationship between the parties themselves. *Cantrell v. Burnett & Henderson Co.*, 216 S.W.2d 307, 309-10 (Tenn. 1948); *see also Harris v. St. Mary's Med. Ctr.*, 726 S.W.2d 902, 905 (Tenn. 1987). Establishing this identity of interest for purposes of applying res judicata will "depend[] on the facts of each case." *Cihlar*, 39 S.W.3d at 181.

We conclude that Hutcherson Metals's interests are identical to those of Hutcherson and WTE and, as such, privity exists under Tennessee law.[4]

Hutcherson Metals is a Tennessee corporation owned and operated by Wiley Hutcherson and his wife. The federal complaint states that WTE, another corporation owned and operated by Wiley Hutcherson and his wife, was established "to operate a landfill . . . for the benefit of" Hutcherson Metals. In their supplemental briefs, Plaintiffs note that Hutcherson Metals is "the entity for whose benefit the proposed landfill is to be operated." Thus, although Hutcherson Metals was not a party plaintiff to the state court action, Hutcherson Metals and the two other plaintiffs have the very same interest in the subject matter of the state and federal proceedings -- securing approval for the operation of

---

[4]Looking to whether a judgment in the federal suit would have a res judicata effect on the state suit under the *Colorado River* abstention doctrine, the district court concluded that the parties in the federal and state actions were not substantially equivalent. However, these distinct interests under *Colorado River* are not exactly parallel to those considered under the privity bar of res judicata. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 376 (6th Cir. 1998) (citing *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 n.4 (1996) ("The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction."); *Jones v. Craig*, 212 F.2d 187, 187-88 (6th Cir. 1954).

a landfill on Hutcherson's property. Thus, privity exists for purposes of Tennessee law, and the principles of res judicata apply. Accordingly, the remaining claims raised by Plaintiffs do not merit discussion.

### III. CONCLUSION

It is apparent that Plaintiffs are seeking to revisit in this action the state court's decision not to order injunctive relief, which would have permitted Plaintiffs to construct their landfill. This is the precise situation prohibited by the doctrine of res judicata. We accordingly **AFFIRM** the district court's dismissal of this complaint.