**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0674n.06
Filed: November 4, 2008

No. 07-6329

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HANGER PROSTHETICS & ORTHOTICS EAST, INC. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| *Plaintiff-Appellant,* | ) ) ) ) | |
| v. | ) | |
| | ) | **O P I N I O N** |
| RICHARD HENSON, ET AL. | ) | |
| *Defendants-Appellees.* | ) | |

BEFORE:     MOORE and COLE, Circuit Judges; and GRAHAM,[*] District Judge.

**COLE, Circuit Judge.**  The issues before this Court arise out of two lawsuits by Plaintiff-Appellant Hanger Prosthetics & Orthotics East, Inc., ("Hanger").  Hanger filed its first lawsuit in the chancery court of Knox County, Tennessee against William Kitchens and Choice Medical, Inc. ("Choice") seeking damages from Kitchens and Choice for, *inter alia*, Kitchens's breach of a non-compete contract and Choice's role in procuring that breach.  The chancery court found for Hanger and awarded it damages in the amount of $720,546.

Hanger filed its second lawsuit in the United States District Court for the Eastern District of Tennessee against Defendants-Appellees Richard Henson and Marty Altshuler (collectively, "Defendants").  The sole cause of action in the complaint relates to Defendants' role as owners and

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

principals of Choice in the procurement of Kitchen's breach of contract. In district court, Defendants—asserting corporate immunity and judicial estoppel— moved to dismiss under Fed. R. Civ. P. 12(b)(6). On consideration of the parties' briefs, the district court reinterpreted sua sponte Defendants' estoppel argument as one of res judicata or claim preclusion. The district court then found that res judicata applied and dismissed Hanger's claim. Hanger now appeals that dismissal. For the reasons explained below, we agree that res judicata does apply, and we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. The State Court Proceedings

Hanger filed a complaint on November 15, 2004, in the chancery court of Knox County, Tennessee against Kitchens and Choice. The complaint requested injunctive relief and damages stemming from the alleged breach of a non-compete agreement between Kitchens and Hanger. The complaint sought relief based on "breach of contract, misappropriation of confidential information and trade secrets, tortious interference with contractual relations, tortious interference with business relations, conspiracy and unfair competition." (JA 14.)

The chancery court concluded that a valid and enforceable non-compete agreement existed between Kitchens and Hanger, and that Choice was liable for tortious interference with contract under Tenn. Code Ann. § 47-50-109 and for tortious interference with business relationships under common law. In its opinion, the chancery court adopted Hanger's proposed statement of facts. The facts presented by Hanger and adopted by the chancery court state in relevant part:

9.     In the summer of 2004, [Henson], a founder and co-owner of [Choice], set up a meeting with Kitchens to discuss employment opportunities at Choice. At this meeting, Henson informed Kitchens that Choice wanted to hire Kitchens to run Choice's orthotics and prosthetics practice in the Knoxville area. In this role, Kitchens would be not only an orthotics practitioner, but also a practice manager and sales representative responsible for growing Choice's orthotics practice in the Knoxville area. Henson pursued Kitchens for this position largely because of Kitchens' extensive relationships with referring physicians in the Knoxville area, developed during Kitchens' fourteen years of employment with [Hanger].

10.     At this meeting, Kitchens informed Henson that he had signed the Agreement and that the Agreement contained a non-compete provision. Henson instructed Kitchens to fax him a copy, which Kitchens did. Henson and his co-owner [Altshuler] then gave the Agreement to their attorney to review. After consulting with their attorney, Henson and Altshuler offered Kitchens the position managing Choice's orthotics practice. Kitchens accepted the position, turning in his resignation letter on August 4, 2004. However, Kitchens still remained with [Hanger] until September 1, 2004, fulfilling the 30-day notice period prescribed by his Agreement.

11.     After September 1, Kitchens began working for Choice as the practice manager of its orthotics practice. Henson and Kitchens visited area physicians to announce Kitchens' new employment with Choice, and Kitchens sent out written announcements that mentioned his prior service at [Hanger] and announced his employment with Choice. To grow the orthotics practice at Choice, Kitchens immediately began soliciting referrals from physicians and physician practice groups that he had serviced on behalf of [Hanger].

11. [sic] On September 29, 2004, once [Hanger] learned that Kitchens was soliciting its referral sources and engaging in direct competition in the Knoxville area on behalf of Choice, counsel for [Hanger] notified Kitchens and Choice in writing that Kitchens' activities on behalf of Choice violated Kitchens' non-compete agreement. In these letters, [Hanger] demanded that Kitchens and Choice cease and desist such activity. Counsel for Choice responded that [Hanger] was not entitled to enforce the Agreement, because [Hanger] was not party to the Agreement and because the Agreement contained no assignment clause that would allow it to be assigned to [Hanger]. [Hanger's] counsel responded with documentation showing that the name on the Agreement, "Fillauer Orthopedic," is a trade name used by [Hanger]. Choice's counsel reiterated his argument against the enforceability of the Agreement, and Kitchens continued performing orthotics work in the Knoxville area on behalf of Choice.

12.     On November 15, 2004, [Hanger] filed suit seeking temporary and injunctive relief, as well as damages, as a result of Kitchens' activities on behalf of Choice. After conducting a preliminary hearing on the matter, the Court issued a temporary injunction on February 23, 2005 prohibiting Kitchens from performing orthotics work on behalf of Choice within the 75-mile area prescribed by Kitchens' Agreement. [The final sentence of this paragraph is omitted because the chancery court did not adopt it.]

13.     After Kitchens discontinued his orthotics practice on behalf of Choice in the non-compete area, Choice hired Harold Chaffins ("Chaffins") to be Choice's orthotics representative in the Knoxville area. In this capacity, Chaffins continued to service the referral sources and patients that Kitchens had solicited to that point.

(Hanger's Proposed Findings of Fact and Conclusions of Law, submitted to the chancery court on

October 3, 2005.)

In its conclusions of law, the chancery court determined that Choice intentionally interfered

with Kitchens' agreement with Hanger and induced Kitchens to breach that agreement:

It is inescapable from the testimony of the principals of Choice Medical [Defendants here] and defendant Kitchens that Kitchens' non-compete agreement was made known to defendant Choice well before Kitchens gave notice of his intent to leave Hanger. In fact, the agreement was submitted to Choice's counsel for review.

The evidence is overwhelming that Choice was not engaged in the orthotics and prosthetics business in the Knoxville area and that the hiring of defendant Kitchens gave them access to a ready market based upon the long standing physician relationship developed by Kitchens as an agent of Hanger. The proof is overwhelming that it was the business plan of Choice to have Kitchens contact these physicians with whom he had long standing relationships, notify them that he was no longer working at Hanger and induce them to continue to use Kitchens as an agent of Choice rather than continuing their relationships with Hanger.

. . .

The Court is satisfied that the elements of [tortious interference with contract and tortious interference with business relationships] has been met and accordingly, Hanger may submit proof, if any, of damages incurred as a result.

- 4 -

> The Court finds that there is insufficient evidence to establish that Choice misappropriated plaintiff's trade secrets or that it conspired to misappropriate Hanger's confidential information.

(JA 71-72.)

Following a hearing to determine the amount of damages, the chancery court issued specific findings regarding the amount of liability.[1] The court concluded that it was undisputed that the temporary injunction had not been violated, and, therefore, the court assessed damages for the period of Kitchens' employment with Choice through the issuance of the injunction: September 1, 2004 to February 23, 2005. The court concluded that the judgment should include net losses during that period, as well as treble damages against Choice for procurement of the breach of contract under Tenn. Code Ann. § 47-50-109. On March 26, 2007, the chancery court entered a specific damages award—$240,180 in lost profits, which, when trebled under Tenn Code Ann. § 47-50-109, totaled $720,546.00—the first $240,180 to be assessed against Kitchens and Choice jointly and severally, and the remaining $480,364 to be assessed against only Choice.

**B.     The Federal Court Proceedings**

1. *Hanger's Complaint*

On April 5, 2007, Hanger filed a complaint in the United States District Court for the Eastern District of Tennessee requesting damages stemming from breach of contract. Specifically, the complaint states:

---

[1]In its Memorandum Opinion on damages, the chancery court reconsidered its earlier opinion and determined that Choice was not guilty of tortious interference with business relationships.

1.    This is an action for damages arising from Defendants' procurement of breach of contract under Tenn. Code Ann. § 47-50-109.  Henson and Altshuler are the principals and owners of [Choice], which provide[s] orthotic and prosthetic products and services in competition with Hanger in the State of Tennessee.   On September 1, 2004, Defendants knowingly and tortiously induced [Kitchens], Hanger's key orthotist in the Knoxville area, to breach his non-compete agreement with Hanger by accepting employment with and actively working for Choice in the Knoxville area.  As a Choice employee, Kitchens, on behalf of and with the assistance of Choice, wrongfully solicited and obtained numerous orthotics referrals from physicians whom Kitchens knew solely because of his employment with Hanger.

2.    On November 15, 2004, Hanger filed [suit in chancery court].  In the State Court Action, Hanger sought injunctive relief and damages against Kitchens and Choice for several claims, including breach of contract and inducement or procurement of breach of contract.

3.    After conducting a trial on the issue of liability on August 30, 2005, the Court found that Kitchens breached his non-compete agreement with Hanger and that Choice, through the actions of its principals Henson and Altshuler, procured such breach in violation of Tenn. Code Ann. § 47-50-109.

(JA 4-5).  The complaint continues with a description of the chancery court's conclusions regarding damages, stating that the chancery court found Choice liable for "$720,546, representing treble damages, and costs.  The treble damages award against Choice was based on the actions of Henson and Altshuler in procuring Kitchens' breach of contract."  (JA 5.)

In the fact section of the Complaint, Hanger repeats the allegations made in, and adopted by, the state court, and continues by describing Defendants' actions as owners of Choice—the Defendant in the state court proceeding:

18.    As found in the State Court Action, Choice, through its owners and principals Henson and Altshuler, continued to use Kitchens as an orthotist in the Knoxville area in violation of Kitchens' non-compete agreement with Hanger.  By their actions in violation of Hanger's rights, Kitchens and Choice obtained numerous orthotics and referrals for Choice from physicians in the Knoxville area, physicians Kitchens had

formally services on behalf of Hanger. Kitchens also performed virtually all of the orthotics work for Choice related to these referrals.

19.     Choice and Kitchens continued their unlawful competition with Hanger until the Chancery Court issued a temporary injunction on February 23, 2005, prohibiting further violation of Kitchens' non-compete agreement pending the resolution of the matter on the merits.

(JA 9-10.) The fact section next describes the proceedings in the state court, and attempts to include the chancery court's conclusions:

23.     Hanger expressly and affirmatively pleads the issues, facts, and/or claims raised [above] are already conclusively established by the findings of fact and conclusions of law, actually litigated and necessarily decided, by the Chancery Court in its rulings . . . .

(JA 11.) The statement of facts concludes:

24.     Henson and Altshuler, through their individual actions, procured the breach of Kitchens' Employment Agreement with Hanger and are liable in their individual capacity as joint tortfeasors for procurement of breach of contract under Tenn. Code Ann. § 47-50-109.

(JA 11.) Finally, Hanger's requested relief is the amount of damages determined by the chancery court.

2. *Defendants' Motion to Dismiss*

On May 22, 2007, Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The motion states:

Defendants, Henson and Altshuler, as corporate officers of [Choice], are immune from any action brought herein based on actions taken by them in their corporate capacity with [Choice]. Further, Plaintiff is judicially estopped to take an inconsistent position in this litigation as to liability under Tenn. Code Ann. § 47-50-109 from that which was taken by the Plaintiff in the companion state court action.

(JA 90.)

On June 11, 2007, Hanger filed its response to Defendants' motion to dismiss, arguing that Defendants were not entitled to immunity and that judicial estoppel should not apply. Hanger also argued that the preclusive doctrine of collateral estoppel did not bar its action against Defendants.

3. *The District Court Decision*

On October 16, 2007, the district court granted Defendants' motion to dismiss. In so doing, the district court restated the facts from Hanger's complaint, and concluded that Defendants' estoppel argument was dispositive. The district court did not address Defendants' immunity argument.

In its analysis, the district court interpreted Defendants' estoppel argument as one of claim preclusion:

> Defendants argue that plaintiff is "judicially estopped to assert an individual claim against the corporate officers of Choice Medical. The allegations and relief sought in the present matter conflict with the allegations and statements of positions taken by Plaintiff in the State Court Action." Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 8 [Doc. 9]. The court interprets this argument essentially as one of claim preclusion: Because the plaintiff had a full and fair opportunity to litigate its claim in the prior state court action, plaintiff is now precluded from raising this claim in federal court.

(JA 120.) The district court determined that Tennessee law would apply, and then provided:

> Tennessee recognizes two preclusion doctrines, res judicata and collateral estoppel. As noted by the Tennessee Supreme Court,
>
> > The doctrine of res judicata, [or claim preclusion], bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of

> action . . . as to issues which were actually litigated and determined
> in the former suit.
>
> *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). As plaintiff raises a claim
> which could and should have been raised in the state court proceeding, the doctrine
> of res judicata, or claim preclusion, applies to this case.
>
> In Tennessee, to successfully assert a res judicata defense, the party "must
> demonstrate (1) that a court of competent jurisdiction rendered the prior judgment,
> (2) that the prior judgment was final and on the merits, (3) that both proceedings
> involved the same parties or their privies, and (4) that both proceedings involved the
> same cause of action." *Gerber v. Holcomb*, 219 S.W.3d. 914, 917 (Tenn. Ct. App.
> 2006) (quoting *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003)).
>
> This case satisfies all four requirements of the Tennessee test for res judicata,
> or claim preclusion. First, a judgment was rendered by a court of competent
> jurisdiction, the Chancery Court of Knox County, Tennessee. Second, that judgment
> was final and issued on the merits. *See* Compl. ¶¶ 20-21. Third, the proceeding
> involved the same parties to this litigation. Though defendants are now sued in their
> individual capacities, they were privities of the defendant of the first suit as principals
> and sole owners of Choice Medical. Finally, the proceedings involve the same cause
> of action: by plaintiff's own admission, this suit arises from the identical set of facts
> and theory of liability for which plaintiff recovered in the Chancery Court. *See* Resp.
> to Defs.' Mot. to Dismiss at 11-13.
>
> In short, it is clear that the doctrine of claim preclusion bars plaintiff's claim
> for personal liability. Had the plaintiff wished to pierce the corporate veil and hold
> defendants Henson and Altshuler personally liable, plaintiff should have raised those
> claims in the prior state court proceeding. The Full Faith and Credit Act and
> principles of res judicata now bar this court from taking action.
>
> Because this issue is dispositive, the court need not reach an analysis on the
> merits of defendants' immunity from personal liability.

(JA 121-22, footnote omitted.) The district court concluded that the "principles of res judicata

preclude plaintiff's claim for defendants' personal liability," and granted Defendants' motion to

dismiss. This appeal followed.

## II. JURISDICTION

Defendants are residents of Tennessee, and Hanger is a Delaware corporation with its principal place of business in Bethesda, Maryland. The district court had jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the matter involves damages in excess of $75,000, exclusive of interest and costs. This Court has jurisdiction under 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

The Court reviews a district court's dismissal of plaintiff's claims under Rule 12(b)(6) de novo. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). In so doing, the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true. *Id.* A motion under Rule 12(b)(6) will be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002). As instructed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, claims survive a Rule 12(b)(6) motion only where the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." 127 S. Ct. 1955, 1959 (2007).

This Court may affirm the district court's dismissal of a plaintiff's claims on any grounds, including those not relied on by the district court. *Zaluski*, 527 F.3d at 570.

## IV.  DISCUSSION

On appeal, Hanger makes four arguments:  (1) that Defendants are not entitled to immunity from tort liability despite acting within the scope of their authority; (2) that judicial estoppel does not apply; (3) that the district court erred by considering sua sponte the res judicata doctrine; and (4) that the district court erred in finding that Hanger's claim against Defendants is barred by the res judicata.  Because res judicata is dispositive, the Court deals only with that issue below.

**A.      The District Court's sua sponte authority**

Defendants did not raise the issue of res judicata in district court.  Under both federal and Tennessee law, res judicata is an affirmative defense that should be raised by the defending party. Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . and any other matter constituting an avoidance or affirmative defense."; Tenn. R. Civ. P. 8.03 (same).  In fact, the failure to plead an affirmative defense in the first responsive pleading "generally results in a waiver of that defense."  *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington. Township*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

While it is also true that courts generally lack the ability to raise an affirmative defense sua sponte, *see Haskell*, 864 F.2d at 1273, this Court has recognized "that it might be appropriate to raise the res judicata defense sua sponte in certain circumstances." *Hutcherson v. Lauderdale County*, 326 F.3d 747 (6th Cir. 2003) (citing *Arizona v. California*, 530 U.S. 392, 412 (2000) ("This result is fully consistent with the policies underlying res judicata:  it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.") and *Holloway Constr. Co. v. United States Dep't of Labor*, 891 F.2d 1211 (6th Cir.

1989) (noting that "a district court may invoke the doctrine of res judicata in the interests of, *inter alia*, the promotion of judicial economy"). Raising res judicata sua sponte in appropriate cases, "insures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits." *McClain v. Apodaca*, 793 F.2d 1031, 1032 (9th Cir. 1986).

This case fits precisely within those circumstances. Hanger previously filed an action against Kitchens and Choice in state court and was awarded damages on its claims. This second action is against Defendants Henson and Altshuler for their alleged role in the same matter. Hanger could have included Defendants in its state court action. However, in state court, Hanger chose to file its procurement of a breach of contract action against only Choice. As in other cases where courts have raised res judicata, the district court properly considered the doctrine sua sponte. *See*, *e.g.*, *McClain*, 793 F.2d at 1032-33 (bankruptcy court sua sponte raised issue of res judicata; affirmed on appeal); *Minneapolis Auto Parts Co. v. City of Minneapolis*, 739 F.2d 408, 409, n.2 (8th Cir. 1984) (claim preclusion raised for first time on appeal; case certified back to district court to consider the effect of res judicata); *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981) (res judicata raised sua sponte by court of appeals); *Hicks v. Holland*, 235 F.2d 183 (6th Cir. 1956) (per curiam) (district court sua sponte raised issues of res judicata; affirmed on appeal), *cert. denied*, 352 U.S. 855 (1956). Moreover, this second litigation wastes judicial resources, risks potentially conflicting judicial determinations, and burdens the parties with multiple lawsuits. For these reasons, the district court properly raised sua sponte res judicata.

**B.     Res judicata**

Res judicata requires that this Court give the same effect to the Tennessee state court

judgment as would be afforded by another Tennessee state court.  28 U.S.C. § 1738; *Marrese v. Am.*

*Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  Res judicata refers to the "preclusive

effect of a judgment" and includes both (1) claim preclusion and (2) issue preclusion, also known

as collateral estoppel.  *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008).[2]  "Claim preclusion

generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same

claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue

preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an

issue of fact or law actually litigated and resolved in a valid court determination essential to the prior

judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v.*

*Maine*, 532 U.S. 742, 748-49 (2001).

The Tennessee Supreme Court has recently restated its law, from a prior unpublished

opinion, on res judicata:[3]

> The doctrine of res judicata bars a second suit between the same parties on
> the *same cause of action* with respect to all the issues which were or could have been
> brought in a former suit.  *Wall v. Wall*, 907 S.W.2d 829, 832 (Tenn. App. 1995).  A
> plaintiff may not, by disclaiming or failing to present a particular fact or theory,

---

[2] However, in Tennessee, res judicata generally refers only to the doctrine of claim preclusion, and the term collateral estoppel is used to refer to the doctrine of issue preclusion.  *See, e.g., Barnett*, 215 S.W.3d at 834-35.

[3] This Court looks to Tennessee law to determine what preclusive effect, if any, the state court's judgment has on the proceedings in this Court.  *See, e.g., Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Hapwood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

> preserve such fact or theory to be used as a ground for a second suit. *McKinney v.
> Widner*, 746 S.W.2d 699 (Tenn. App. 1987).

*Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 834-835 (Tenn. 2007) (quoting *Uselton v. Conwood*, 1997 Tenn. LEXIS 108, *10-11 (Tenn. 1997) (emphasis added)). Claim preclusion "is broader in its application than a mere determination of the questions involved in the prior action. The bar of the judgment in such cases extends not only to matters actually determined, but also to other matters which in the exercise of due diligence could have been presented for determination in the prior action." *Gerber*, 219 S.W.3d at 918 (quoting *Gaither Corp. v. Skinner*, 85 S.E.2d 909, 911 (N.C. 1955)). The underlying purpose for the application of res judicata "is to protect individuals from the burden of litigating multiple lawsuits, to promote judicial economy, and to promote the policy favoring reliance on finals judgments by minimizing the possibility of inconsistent decisions" *Gerber*, 219 S.W.3d at 918 (quoting *W.G. Myers v. Olson*, 676 P.2d 822, 824 (N.M. 1984)). Simply put, "every one is entitled to his day in court, and no more, on the same cause of action; . . . he has enjoyed this right when he has contested the matter with persons committing the wrong and primarily liable . . . ." *Cantrell v. Burnett & Henderson Co.*, 216 S.W.2d 307, 310 (Tenn. 1948) (quoting *Loveman Co. v. Bayless*, 160 S.W. 841, 843 (Tenn. 1913)).

The Tennessee courts require the following factors be met before either res judicata doctrine can be used to bar a subsequent suit:

> One defending on the basis of res judicata or collateral estoppel must demonstrate that (1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and (2) both cases involved the same parties, the same cause of action, or identical issues. *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn. App. 1977).

*Barnett*, 215 S.W.3d at 834-35 (quoting *Uselton*, 1997 Tenn. LEXIS 108, *10-11)); *see also Richardson v. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). Restated for purposes of res judicata, Tennessee requires that four factors be established: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Gerber*, 219 S.W.3d at 917 (quoting *Young*, 130 S.W.3d at 64).

The parties do not dispute that the first, third, and fourth prongs are met: a decision was rendered by the chancery court of Knox County, Tennessee, the decision involved the same cause of action on an identical set of facts, and the decision was final and on the merits. We must, therefore, consider only whether the situation presented here also satisfies the test's second prong—that the cases involve the same parties. This prong is met when a cause of action involves "the same parties or their privies." *Richardson*, 913 S.W.2d at 469 (citations omitted). "In the context of both res judicata and collateral estoppel, the concept of privity relates to the subject matter of the litigation[.]" *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000) (citing *Harris v. St. Mary's Med. Ctr. Inc.*, 726 S.W.2d 902, 905 (Tenn. 1987); *Shelly v. Gipson*, 400 S.W.2d 709, 712 (Tenn. 1966)). "Privity connotes an identity of interest, that is, a mutual or successive interest to the same rights." *Cihlar*, 39 S.W.3d at 180 (citations omitted). "Establishing this identity of interest for purposes of applying res judicata will 'depend[] on the facts of each case'" *Hutcherson*, 326 F.3d at 759 (citing *Cihlar*, 39 S.W.3d at 181). In *Hutcherson*, this Court determined that an identity of interests existed between a Tennessee corporation and its owners and

operators, Wiley Hutcherson and his wife, and we therefore raised sua sponte the issue of res judicata and dismissed the action. 326 F.3d at 759-60.

Here, we conclude that Defendants' interests are identical to those of Choice, and, as such, privity exists under Tennessee law. While the standards set out in Rule 12(b)(6) typically set a high hurdle for the application of res judicata, the relevant facts here are uncontroverted. Indeed, Hanger, in its federal complaint, "expressly and affirmatively pleads that the issues, facts, and/or claims [in this action] are already conclusively established by the findings of fact and conclusions of law, actually litigated and necessarily decided, by the Chancery Court . . . ." (JA 11.) Choice is a Tennessee corporation that provides orthotic and prosthetic products and services. Defendants are the owners and principals of Choice. Choice's decision to employ Kitchens was made by Defendants. And the financial benefits that Choice enjoyed from Kitchens' employment inured to Defendants. Moreover, Choice's liability, as determined by the chancery court, under Tenn. Code Ann. § 47-50-109 for procurement of a breach of contract was based solely on the actions of Defendants. As described by the Tennessee Supreme Court in *Shelly*, "[i]n a situation where a party is trying to b[r]ing suit against a se[rvant] after having [previously filed] against the master on a vicarious liability claim, the servant is in privity with the master . . . ." 400 S.W.2d at 712. Here, Hanger brings an action against Defendants after having previously litigated the same cause of action against Choice. Both cases involve the alleged actions of Defendants Henson and Altshuler in their capacities as principals and owners of Choice. As such, Defendants are privies to the subject matter of litigation that involves the same issues, facts, and cause of action. We therefore conclude that the doctrine of res judicata applies.

### V. CONCLUSION

A court of competent jurisdiction concluded Hanger's rights as to its procurement of a breach of contract cause of action. Hanger may not now relitigate that claim against Henson and Altshuler simply because it failed to include those Defendants in the earlier litigation; to do so would be a waste of judicial resources and the precise situation that the doctrine of res judicata prohibits. As such, we **AFFIRM** the district court's dismissal of the complaint.