# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 15, 2006 Session

## FRANCES BARNETT v. MILAN SEATING SYSTEMS

**Direct Appeal from the Chancery Court for Gibson County**
**No. 17331     George R. Ellis, Chancellor**

---

**No. W2006-00582-SC-R3-WC - Filed on February 2, 2007**

---

We accepted this appeal prior to its review by a Special Workers' Compensation Appeals Panel primarily to determine whether the chancery court correctly ruled that an employee is working for her "pre-injury employer" for purposes of Tennessee Code Annotated section 50-6-241(d)(1)(A) when the company she was working for at the time of the injury is sold to a new entity and the employee's place of work, job duties, and rate of pay with the new entity remain unchanged. We conclude that an employee is not working for her "pre-injury employer" when she returns to work and the company she was working for at the time of the injury then is purchased by a different company, and this is so even if the employee's place of work, job duties, and rate of pay remain unchanged. The judgment of the chancery court on this particular issue is, therefore, reversed.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Chancery Court**
**Affirmed in Part and Reversed and Remanded in Part**

D. MICHAEL SWINEY, SP.J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

Jeffrey P. Boyd, Jackson, Tennessee, for the appellant, Frances Barnett.

P. Allen Phillips, Jackson, Tennessee, for the appellee, Milan Seating Systems.

**OPINION**

## I.  Factual and Procedural Background

Frances Barnett ("Plaintiff") is currently fifty-four years old and a high school graduate with an associates degree in business.  In May of 2003, after performing forceful and repetitive work at defendant Milan Seating Systems ("Milan Seating") for approximately fourteen years, Plaintiff sought medical treatment from Dr. Claiborne Christian.  Plaintiff complained of pain, numbness, and tingling in both hands, with the pain in her left hand being greater than the pain in her right hand.  A nerve conduction study showed moderately severe carpal tunnel syndrome on the left side, with normal results on the right.  Phalen's and Tinel's tests were positive bilaterally.  Dr. Christian diagnosed Plaintiff with bilateral carpal tunnel syndrome, moderately severe on the left side.  Dr. Christian eventually performed a carpal tunnel release on the left side.  Plaintiff tolerated the surgical procedure well and experienced positive results.  Plaintiff was returned to work with no restrictions. Dr. Christian assigned Plaintiff a 3% permanent partial impairment to the left upper extremity.

Plaintiff filed her first complaint for workers' compensation benefits on June 6, 2003, claiming she suffered a work-related injury to both of her arms while employed by Milan Seating. On November 24, 2003, an agreed settlement was approved by the chancery court .  Pursuant to that settlement, Plaintiff received lump-sum benefits for a vocational disability of 19.75% to the left upper extremity and 9.87% to the right upper extremity.  Medical benefits remained open.

Almost one year after the first lawsuit was settled, Plaintiff returned to Dr. Christian on November 3, 2004, again complaining of bilateral hand pain, numbness, and tingling.  Tinel's and Phalen's tests were mildly positive on the right and equivocal on the left.  Plaintiff was diagnosed with moderately severe carpal tunnel syndrome and mild cubital tunnel syndrome on the right.  In February of 2005, Dr. Christian performed both a carpal tunnel release and a cubital tunnel release on Plaintiff's right upper extremity.  Thereafter, Dr. Christian assigned Plaintiff an 8% permanent partial impairment to the right upper extremity.  Of the total 8% impairment, Dr. Christian attributed one-half of that total, or 4%, to the carpal tunnel syndrome.  The remaining 4% permanent partial impairment was attributed to the cubital tunnel syndrome.  Dr. Christian released Plaintiff to return to work without any restrictions.

An independent medical examination was performed by Dr. Joseph Boals.  Dr. Boals concluded that Plaintiff had a 10% permanent partial impairment to the right upper extremity as a result of the carpal tunnel syndrome, and an additional 5% permanent partial impairment to that extremity as a result of the cubital tunnel syndrome.

On December 21, 2004, Plaintiff filed a second workers' compensation lawsuit against Milan Seating.  Plaintiff sought compensation for the carpal tunnel and cubital tunnel injuries to her right upper extremity.  Milan Seating filed an answer asserting res judicata as an affirmative defense to part of Plaintiff's claim.  More specifically, Milan Seating claimed that Plaintiff already had received vocational disability benefits for the carpal tunnel injury to her right upper extremity and she was,

therefore, barred from receiving any further vocational disability benefits for that same injury. On appeal, Milan Seating acknowledges that the cubital tunnel syndrome was a new and compensable injury.

On June 5, 2005, Milan Seating was sold to Kongsberg Automotive ("Kongsberg"). The sale resulted in no changes to Plaintiff's employment, and she continued to perform the same job at the same location at the same rate of pay. The only effect of the sale from Plaintiff's standpoint was that she was now being paid by Kongsberg. Plaintiff still was working for Kongsberg on the date of trial.

There were essentially three issues at trial. The first issue was whether Plaintiff had suffered a new carpal tunnel injury to her right upper extremity. The next issue was whether Plaintiff should be considered as having returned to work for her "pre-injury employer" such that any benefits would be capped at 1.5 times the medical impairment rating as set forth in Tennessee Code Annotated section 50-6-241(d)(1)(A) (2005). The final issue was the extent of Plaintiff's vocational disability to her right upper extremity.

The chancery court found that Plaintiff's carpal tunnel injury to her right upper extremity was not a new injury. Therefore, since Plaintiff already had been compensated for that carpal tunnel injury, she was not entitled to any additional vocational disability benefits. However, the chancery court also determined that the cubital tunnel syndrome was a new injury and Plaintiff was entitled to compensation for that particular injury. The chancery court then concluded that Plaintiff was subject to the 1.5 multiplier found in Tennessee Code Annotated section 50-6-241(d)(1)(A) and limited her recovery for the cubital tunnel syndrome to a vocational disability of 7.5% to the right upper extremity.

Plaintiff appeals, raising two issues. First, Plaintiff claims the chancery court erred when it determined that her recovery was limited by the 1.5 multiplier set forth in Tennessee Code Annotated section 50-6-241(d)(1)(A). Second, Plaintiff claims the chancery court erred when it found Plaintiff had not suffered a new carpal tunnel injury, thereby preventing her from receiving any additional vocational disability benefits for that injury.

## II. Analysis

Our standard of review for questions of law in a workers' compensation case is de novo without a presumption of correctness as to the trial court's conclusions. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003). Our review of factual issues is de novo upon the record of the trial court, accompanied by a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005); Houser v. Bi-Lo, Inc., 36 S.W.3d 68, 70-71 (Tenn. 2001).

A.  Applicability of the 1.5 Multiplier Found at
Tennessee Code Annotated Section 50-6-241(d)(1)(A)

Relying on our opinion in Perrin v. Gaylord Entm't Co., 120 S.W.3d 823 (Tenn. 2003), Plaintiff argues the chancery court erred when it concluded the 1.5 multiplier limited her recovery in this case.  Milan Seating argues that the chancery court correctly determined that Perrin does not apply or, alternatively, if Perrin does apply, then we should overrule our holding in that case.

In Perrin, the plaintiff injured his lower back while working for The Nashville Network ("TNN"), which was owned by Gaylord Entertainment Company.  120 S.W.3d at 824.  Following surgery, the plaintiff returned to work at TNN.  Id. at 825.  The plaintiff was assigned a permanent partial impairment rating of 18% to the body as a whole.  Id.  The plaintiff settled his workers' compensation claim based on a 45% vocational disability to the body as a whole, which was 2.5 times the medical impairment rating.[1]  Id. Prior to the settlement, TNN was purchased by CBS Corporation in October of 1997.  Id.  The sale initially resulted in no changes to the plaintiff's job duties or pay.  Id.  The only initial change from the plaintiff's standpoint was that he was being paid by CBS.  Id.  Plaintiff's job was terminated in December of 1998.  Id.  In September of 1999, pursuant to Tennessee Code Annotated section 50-6-241(a)(2) (1999), the plaintiff filed an action for reconsideration of his original award against Gaylord Entertainment.[2]  Id.  The trial court dismissed the request for reconsideration after finding that it had not been filed within one year of the plaintiff's loss of employment as required by Tennessee Code Annotated section 50-6-241(a)(2). Id.

On appeal in Perrin, we affirmed the decision of the trial court and concluded that the plaintiff's request for reconsideration had not been filed timely.  We stated:

> We begin our analysis by reviewing the statutory provisions that govern the circumstances in which an employee may seek reconsideration of a prior workers' compensation award:
>
>> [T]he court may reconsider, upon the filing of a new cause of action, the issue of industrial disability. . . .  Such reconsideration may be made in appropriate cases where the

---

[1] Tennessee Code Annotated section 50-6-241(a)(1) (2005) limits a vocational disability award to 2.5 times the medical impairment rating for specified injuries occurring between August 1, 1992, and July 1, 2004, when the employee returns to work for the "pre-injury employer" at a wage equal to or greater than what the employee was earning at the time of the injury.  For injuries occurring on or after July 1, 2004, the employee is limited to 1.5 times the medical impairment rating when the employee returns to work for the "pre-injury employer" at a wage equal to or greater than what the employee was earning at the time of the injury.  Tenn. Code Ann. § 50-6-241(d)(1)(A) (2005).

[2] Tennessee Code Annotated section 50-6-241(a)(2) (1999) authorizes an employee who received an award subject to the 2.5 multiplier to file an action for reconsideration if that employee becomes no longer employed by the pre-injury employer. The action for reconsideration must be filed within one year of the loss of employment, and the loss of employment must occur within 400 weeks of the day the employee returned to work.

> employee is no longer employed by the pre-injury employer and makes application to the appropriate court within one (1) year of the employee's loss of employment, if such loss of employment is within four hundred (400) weeks of the day the employee returned to work.

Tenn. Code Ann. § 50-6-241(a)(2) (1999) (emphasis added); see also Niziol, 8 S.W.3d at 624 (applying section 50-6-241(a)(2)).

The key provisions of Tennessee Code Annotated section 50-6-241(a)(2) as applied in this case state that an action for reconsideration may be made where the employee (1) "is no longer employed by the pre-injury employer," and (2) "makes application within one (1) year of the employee's loss of employment." Tenn. Code Ann. § 50-6-241(a)(2) (1999). We will look at each requirement in turn.

The phrase "no longer employed with the pre-injury employer" is not defined in Tennessee Code Annotated section 50-6-241(a)(2) or elsewhere in the statutory scheme. The term "employer," however, is defined and includes:

> any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay . . . . If the employer is insured, it shall include the employer's insurer, unless otherwise herein provided.

Tenn. Code Ann. § 50-6-102(11) (Supp. 2003). A plain and ordinary interpretation of "pre-injury" employer, therefore, means the "employer" for which the employee was working before the compensable injury occurred. See Niziol, 8 S.W.3d at 624 (applying plain and ordinary meaning).

The phrase "loss of employment" is likewise not defined in Tennessee Code Annotated section 50-6-241(a)(2) or elsewhere in the statutory scheme. When the statute is read as a whole, however, it states that an application for reconsideration of an award may be filed "where the employee is no longer employed by the pre-injury employer and makes application to the appropriate court within one (1) year of the employee's loss of employment." Tenn. Code Ann. § 50-6-241(a)(2). A plain and ordinary interpretation of "loss of

-5-

employment" must be read harmoniously with "no longer employed by the pre-injury employer." In short, the statute requires that an application for reconsideration must be made within one year of the employee's loss of employment with the pre-injury employer and not within one year of the loss of employment with a later or successor employer. See Parks, 974 S.W.2d at 679 (applying the plain and ordinary interpretation).

Applying these statutory provisions, it is clear that Perrin's pre-injury employer was Gaylord and that he failed to seek reconsideration of his workers' compensation award within one year of his loss of employment with Gaylord. Perrin's employment with Gaylord ended when Gaylord was purchased by CBS on October 1, 1997; his action for reconsideration, however, was not filed until September 17, 1999, i.e., almost two years after he had lost his employment with Gaylord and nearly 18 months after he had reached a settlement with Gaylord in March of 1998. Accordingly, the Panel properly affirmed the trial court's finding that the action for reconsideration was untimely.

Perrin, 120 S.W.3d at 826-27.

Returning to the present case, the chancery court concluded, without explanation, that Perrin was not applicable and the 1.5 multiplier limited Plaintiff's recovery. This necessarily means that the chancery court concluded that Plaintiff was working for her pre-injury employer, notwithstanding the fact that Milan Seating was purchased by Kongsberg several months after Plaintiff filed her second workers' compensation lawsuit and over eight months prior to the trial. This conclusion is flatly inconsistent with our holding in Perrin. Plaintiff either is or is not working for her pre-injury employer. Perrin holds that an employee is no longer working for his or her pre-injury employer if that company is purchased by a new entity, and this is so even if that employee is performing the same job duties at the same rate of pay at the same location. 120 S.W.3d at 827.

Milan Seating argues that if Perrin is applicable, we should reverse our holding in that case. We decline such an invitation. In so doing, we note that following our decision in Perrin, the Tennessee General Assembly amended Tennessee Code Annotated section 50-6-241 and those amendments in no way addressed our holding in Perrin. See Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 519 (Tenn. 2005) ("While legislative inaction is generally irrelevant to the interpretation of existing statutes, the legislature's failure to 'express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.' Hamby v. McDaniel, 559 S.W.2d 774, 776 (Tenn. 1977)"). This principle is even more applicable where, as here, the General Assembly has amended the very statutory section at issue following issuance of the judicial opinion and the General Assembly did nothing to address the judicial construction given to the statute. Our opinion in Perrin was issued on December 5, 2003, and the

General Assembly amended Tennessee Code Annotated section 50-6-241 on May 20, 2004, with many of the amendments to take effect on July 1, 2004. See 2004 Tenn. Pub. Acts 2346-74, et seq.

We conclude that Perrin controls this issue concerning the applicability of the 1.5 multiplier. Accordingly, Plaintiff's recovery was not limited by the 1.5 multiplier found at Tennessee Code Annotated section 50-6-241(d)(1)(A), and the chancery court erred in so holding.

### B. Whether the Chancery Court Erred when it Concluded Plaintiff's Carpal Tunnel Syndrome was not a New Injury.

Dr. Christian testified that when he first treated Plaintiff in May of 2003, she complained of having pain in both hands for several months. Dr. Christian further testified that Plaintiff had positive Phalen's and Tinel's tests bilaterally. Dr. Christian's initial diagnosis was bilateral carpal tunnel syndrome. In addition, Dr. Boals' medical records from June 2005, state:

> This 52 year old who worked for Milan Seating gives a past history of having a left carpal tunnel release performed in 2003. At [the] time of that surgery carpal tunnel syndrome was also found on the right but was not severe. Over time Ms. Barnett developed increased symptoms of pain and numbness in the hand and later involved all fingers of her right hand.

When Plaintiff filed her first lawsuit, she sought compensation, in part, for the carpal tunnel injury to her right upper extremity. When the first lawsuit was settled, Plaintiff received a vocational disability of 9.87% to the right upper extremity plus future medical benefits causally related to that carpal tunnel injury.

Both parties discuss in their briefs the case of Uselton v. Conwood, No. 02S01-9607-CV-00070, 1997 WL 76807 (Tenn. Workers' Comp. Panel Feb. 25, 1997),[3] although the parties disagree about the precedential value of that case. When the plaintiff in Uselton began receiving medical treatment, she complained of problems with her right shoulder and her right and left wrists. 1997 WL 76807, at *1. The plaintiff eventually underwent a carpal tunnel release on her right wrist. Id. Plaintiff filed a complaint for workers' compensation benefits, claiming she had carpal tunnel syndrome in both wrists as well as right shoulder problems. Id. In March of 1991, the plaintiff was diagnosed with ulnar neuropathy of the left elbow, and ulnar nerve entrapment secondary to chronic repetitive flexion and extension of her elbow at work. Id. at *1 n.2. The plaintiff underwent surgery on her right shoulder in May of 1991. Approximately five months later, the plaintiff complained of numbness and pain in her left hand. Id. at *1. The plaintiff eventually was referred to Dr. Dan Scott, and an EMG was performed. Id. Dr. Scott advised the employer's claims representative that the plaintiff had a 15% permanent partial impairment to the left upper extremity, which translated to a

---

[3] The Uselton opinion issued by the Special Workers' Compensation Appeals Panel was adopted by the full Supreme Court.

7½% impairment to the body as a whole.  Id.  In December of 1992, the plaintiff settled her workers' compensation claim for a vocational disability of 30% to the body as a whole.  Id.  The settlement specifically stated that the "plaintiff's injury resulted from the development of right ulnar nerve entrapment and impingement syndrome of the shoulder, and left carpal tunnel syndrome secondary to repetitive motion and use at work."  Id.  The plaintiff eventually filed a second lawsuit claiming that she sustained a new injury or aggravation of a prior injury to the left upper extremity.  Id. at *2.  After the second lawsuit was filed, the plaintiff apparently underwent a carpal tunnel release on the left side.  Id.  The employer claimed the doctrine of res judicata barred the new lawsuit.  The trial court agreed and dismissed the lawsuit.  Id.  The Special Workers' Compensation Appeals Panel affirmed the decision of the trial court stating, in relevant part, as follows:

> Defendants' motion is based on principles of res judicata and/or collateral estoppel.  The doctrine of res judicata bars a second suit between the same parties on the same cause of action with respect to all the issues which were or could have been brought in a former suit.  Wall v. Wall, 907 S.W.2d 829, 832 (Tenn. App. 1995).  A plaintiff may not, by disclaiming or failing to present a particular fact or theory, preserve such fact or theory to be used as a ground for a second suit.  McKinney v. Widner, 746 S.W.2d 699 (Tenn. App. 1987).  The doctrine of collateral estoppel bars the same parties or their privies from relitigating in a second suit issues that were actually litigated and determined in a former suit.  Dickerson v. Godfrey, 825 S.W.2d 692, 694 (Tenn. 1992).  This doctrine does not apply to issues that were not necessary for the decision in the former case, Scales v. Scales, 564 S.W.2d 667, 670 (Tenn. App. 1977), or when the party against whom the preclusion is sought did not have a full and fair opportunity to litigate the issue in the prior suit.  Morris v. Esmark Apparel, Inc., 832 S.W.2d 563, 566 (Tenn. App. 1991).  One defending on the basis of res judicata or collateral estoppel must demonstrate that (1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and (2) both cases involved the same parties, the same cause of action, or identical issues.  Scales v. Scales, 564 S.W.2d 667, 670 (Tenn. App. 1977).

> Plaintiff's second lawsuit involved the same parties, the same cause of action, and the same issue regarding permanent impairment to her left extremity, which were considered and determined in her first lawsuit.  Although they ultimately settled their first suit, both parties had full opportunity to litigate the issues.  The medical proof in this record is woefully incomplete, but it is clear that plaintiff had experienced problems with her left extremity as far back as 1991.  The judgment order in . . . [the first lawsuit] clearly reflects injuries

-8-

> to both plaintiff's right and left extremities. Dr. Scott's April 1992 letter confirms the left side impairment. Defendants made payments of $5,000.00 for treatment for these earlier problems. . . . The medical testimony provided from Dr. Rizk by deposition does not support a diagnosis of a new and independent injury. On the record presented, we find that no genuine issue exists as to the material facts relevant to this issue. Defendants are entitled to judgment as a matter of law.

Uselton, 1997 WL 76807, at **3 - 4.

Under Tennessee law, when a plaintiff suffers from a pre-existing condition, a claim is not compensable when the employment does not cause an actual progression or aggravation of the underlying injury. See Cunningham v. Goodyear Tire & Rubber Co., 811 S.W.2d 888, 890 (Tenn. 1991). If the employment causes an increase in pain with no corresponding permanent anatomical change, then there is no new compensable injury. Id.; Talley v. Virginia Ins. Reciprocal, 775 S.W.2d 587, 591 (Tenn. 1989). In the present case, the chancery court found that Plaintiff's carpal tunnel injury was not a new injury and then concluded that because she already had received a vocational disability award for that injury, the doctrine of res judicata prevented her from receiving any further vocational disability benefits for that particular injury. Implicit in the chancery court's finding is a determination that Plaintiff did not suffer an anatomical change from the carpal tunnel syndrome, although she certainly had an increase in pain necessitating surgery. The record shows that Plaintiff's second lawsuit involves the same parties and the same cause of action, at least with respect to the carpal tunnel injury to the right upper extremity. We conclude the evidence does not preponderate against the chancery court's finding of fact that Plaintiff did not suffer a new carpal tunnel injury. Because Plaintiff did not suffer a new injury, res judicata bars Plaintiff's second claim on the same carpal tunnel injury.[4] The judgment of the chancery court with regard to Plaintiff's carpal tunnel injury is, therefore, affirmed.

### III. Conclusion

The judgment of the chancery court that Plaintiff's carpal tunnel injury to her right upper extremity is barred by res judicata is affirmed. The judgment of the chancery court that Plaintiff's recovery for the cubital tunnel injury was capped at 1.5 times the medical impairment rating in accordance with Tennessee Code Annotated section 50-6-241(d)(1)(A) is reversed. This case is remanded to the chancery court for further proceedings consistent with this opinion, including a determination of Plaintiff's vocational disability to her right upper extremity arising from the cubital tunnel injury without the limitation of the 1.5 multiplier.

---

[4] The opposite likewise would hold true. If a plaintiff suffers a new compensable injury, there would be no need to undertake a res judicata analysis.

The costs of this appeal are taxed one-half to the appellant, Frances Barnett, and her surety, and one-half to the appellee, Milan Seating Systems, for which execution may issue if necessary.

_____

D. MICHAEL SWINEY, SP. J.