# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 28, 2011

## IN THE MATTER OF: SHYRONNE D. H., et al.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002074-10     John R. McCarroll, Jr., Judge**

_____

**No. W2011-00328-COA-R3-PT - Filed July 7, 2011**

_____

This is a termination of parental rights case with an unusual procedural history. Following an incident with one of her children, Appellant Mother was charged with one count of aggravated child neglect or endangerment and one count of aggravated child abuse of a child under eight years of age. She pleaded guilty to aggravated assault and was sentenced to six years' incarceration. In a separate proceeding, the children were adjudicated to be dependent and neglected and victims of severe child abuse. At the termination of parental rights hearing, which is the subject of this appeal, the trial court determined that the previous finding of severe child abuse was *res judicata* and did not permit the parties to relitigate the issue. We conclude that the trial court erred in finding the issue of severe child abuse to be *res judicata* because the order finding the children to be dependent and neglected and victims of severe child abuse is not a final judgment. Consequently, Appellant should have been permitted to present evidence and argument at the termination proceeding as to whether she committed severe child abuse. The judgment of the trial court is vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Andrew L. Wener, Memphis, Tennessee, for the appellant, Danielle M. H.

Robert E. Cooper, Jr., Attorney General and Reporter; and John J. Baroni, Solicitor General, for appellee, State of Tennessee, Department of Children's Services.

Kimberly Avery Patterson, Guardian Ad Litem, for Shyronne D. H., Corey H., Eriq T. H., Amani M. H., Dwayne M. H., and Derrix D. C., Jr.

**OPINION**

## I. Background Facts & Procedure

This appeal involves the termination of a mother's parental rights. Appellant, Danielle M. H. ("Mother")[1], is the mother of eight children, although this case involves only six of her children: Shyronne D. H. (d.o.b. 12/13/1998), Corey H. (d.o.b. 9/5/2000), Eriq T. H. (d.o.b. 12/8/2001), Amani M. H. (d.o.b. 3/14/2003), Dwayne M. H. (d.o.b. 9/6/2005), and Derrix D. C., Jr. ("Derrix") (d.o.b. 3/28/2007).[2]

On October 14, 2008, the Criminal Court of Shelby County indicted Mother on one count of aggravated child neglect or endangerment and one count of aggravated child abuse of a child under eight years of age.[3] These charges arose from an incident occurring on July 23, 2008, between Mother and her son, Derrix. As a result of the July 23 incident, the children were placed in the custody of their maternal grandmother on August 1, 2008. The children were then placed in the temporary custody of the Department of Children's Services ("DCS") on November 12, 2008, and have remained in foster homes since that time. Because of the criminal charges, Mother was incarcerated from October 17, 2008, to May 27, 2009. On August 16, 2010, Mother pleaded guilty to felony aggravated assault and was sentenced to six years' incarceration. She is currently incarcerated.

DCS subsequently petitioned the juvenile court to adjudicate the children dependent and neglected. On July 7, 2009, the juvenile court sustained DCS's petition and found the children to be dependent and neglected pursuant to Tennessee Code Annotated Sections 37-1-102(b)(12)(F) and (G).[4] The juvenile court also found the children to be victims of severe

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identity.

[2] Mother gave birth to two more children, Deandre H. (d.o.b. 11/20/2008) and De'Juan H., after the six children at issue were taken out of her custody. On November 10, 2010, in a separate proceeding, Deandre H. was adjudicated dependent and neglected and ordered into his paternal grandmother's custody. The appellate record contains no other information regarding De'Juan H.

[3] Specifically, Mother was indicted for alleged violations of Tennessee Code Annotated Section 39-15-402.

[4] In relevant part, Tennessee Code Annotated Section 37-1-102(b)(12) defines a dependent and neglected child to be a child:

(F) Who is in such condition of want or suffering or is under such improper guardianship or control
(continued...)

child abuse under Tennessee Code Annotated Section 37-1-102(b)(23)(A), due to the severe physical abuse suffered by Derrix.[5] Based on these findings, the juvenile court ordered the children to remain in DCS's custody and ordered that Mother could have no contact with them. Mother appealed this order to the Circuit Court of Shelby County pursuant to Tennessee Code Annotated Section 37-1-159.

On November 9, 2010, the Shelby County Circuit Court, Judge Karen R. Williams presiding, conducted a *de novo* appeal of the juvenile court's dependency and neglect adjudication. Judge Williams found the children to be dependent and neglected and severely abused, pursuant to Tennessee Code Annotated Sections 37-1-102(b)(1)[6], -102(b)(12)(F), and -102(b)(23)(A). Judge Williams based her findings on the "severe injuries Derrix suffered in the custody of his mother." Such injuries included, "a cerebral hypoxic brain injury, subarachnoid hemorrhage in the brain, and extensive bilateral retinal hemorrhages in his eyes." As found by Judge Williams, Derrix "now lives with several irreversible medical conditions, including blindness, an inability to speak, an inability to walk, cerebral palsy, and a seizure disorder." Judge Williams found that Derrix's injuries could not have occurred in the manner claimed by Mother and found that Mother "caused life-threatening injuries to Derrix," which occurred while the other five children were in the home. Additionally, Judge Williams found that it was in the children's best interests to remain in DCS's custody. Mother appealed the circuit court's finding of dependency and neglect and severe child abuse to this Court on November 12, 2010.[7]

---

[4](...continued)
as to injure or endanger the morals or health of such child or others;

(G) Who is suffering from abuse or neglect.

[5]Tennessee Code Annotated Section 37-1-102(b)(23)(A) defines severe child abuse as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death."

[6] Tennessee Code Annotated Section 37-1-102(b)(1) provides that, "'Abuse' exists when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker."

[7]We note that Mother filed her appeal in the dependency and neglect matter, Docket No. W2011-00037-COA-R3-JV, on November 12, 2010. However, the appellate record in that case was not filed with this Court until May 20, 2011. We have been provided with no reason for the delay. This presents an unusual circumstance in which an appeal of a termination of parental rights case is decided before an appeal
(continued...)

On April 23, 2010, DCS filed its petition to terminate Mother's parental rights.[8] As grounds for termination against Mother, DCS alleged: (1) abandonment by failure to contribute to the support of the children pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(i); (2) abandonment by incarcerated parent pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv); (3) substantial non-compliance with the permanency plan pursuant to Tennessee Code Annotated Section 36-1-113(g)(2);[9] (4) persistent conditions pursuant to Tennessee Code Annotated Section 36-1-113(g)(3); and (5) severe child abuse pursuant to Tennessee Code Annotated Section 36-1-113(g)(4). DCS later amended its complaint to include, as a further ground for termination of parental rights, that Mother had been sentenced to more than two years' imprisonment for committing severe child abuse against Derrix pursuant to Tennessee Code Annotated Section 36-1-113(g)(5). Further, DCS asserted that termination of Mother's parental rights was in the best interest of the children.

Through appointed counsel, Mother filed an answer to DCS's amended complaint, denying all of DCS's claims, asserting multiple affirmative defenses, and denying that it would be in the best interest of the children for Mother's parental rights to be terminated. A termination of parental rights hearing was held in the Shelby County Circuit Court on November 10 and 15, 2010, with Judge John R. McCarroll presiding. Mother appeared before the court with counsel, and a guardian *ad litem* was present to represent the children.

At the beginning of the termination of parental rights proceeding, DCS introduced Judge Williams's order from the dependency and neglect proceeding, which took place the previous day.[10] Therein, Judge Williams found the children to be dependent and neglected

---

[7](...continued)
of a dependency and neglect adjudication.

[8]In the same petition, DCS sought to terminate the rights of Chamuse H., Corey W., Mark L. J., Erron L., Dwayne A., Derrix D. C., Sr., and Unknown Father(s) (collectively referred to as the "Fathers"). Mother testified that Chamuse H. is the father of Shyronne D. H.; Corey W. is the father of Corey H.; Mark L. J. is the father of Eriq T. H.; Erron L. is the father of Amani M. H.; Dwayne A. is the father of Dwayne M. H.; and Derrix D. C., Sr. is the father of Derrix. The Fathers' rights were each eventually terminated and are not at issue in this appeal.

[9] DCS later dropped this allegation against Mother.

[10]DCS actually introduced, as trial exhibits 1 and 2, two identical orders entered by Judge Williams. It appears that the dependency and neglect proceeding for Deandre H. proceeded in the juvenile court separately from the other children and that both cases were consolidated in Judge Williams's court. *See supra* note 2. However, this is not conclusively established by the appellate record, and we cannot otherwise
(continued...)

and severely abused pursuant to Tennessee Code Annotated Sections 37-1-102(b)(1), -102(b)(12)(F), and -102(b)(23)(A). The dependency and neglect order signed by Judge Williams was entered on the same day that the termination proceedings began, November 10, 2010.[11] In introducing this order, DCS sought to have the issue of whether Mother committed severe child abuse conclusively established under the doctrine of *res judicata.* Mother's attorney objected, arguing that, because the dependency and neglect order had been entered that same day, it was not a final order subject to *res judicata* because it could be appealed or revised within thirty days of its entry. DCS argued that it was a final judgment under Tennessee Rules of Civil Procedure Rule 58 and that, although it was subject to appeal, it was nevertheless a final judgment which would satisfy Tennessee Rules of Appellate Procedure Rule 3(a). After considering the arguments of counsel, the trial court ruled from the bench as follows:

> I think that the issue of severe abuse was obviously litigated in a hearing before Judge Williams. I think her findings are specific on that issue[,] and I think that the relitigation of the issue of severe abuse would not only be contrary to the law that has been argued but it would be redundant and not a good use of the parties' or the Court's time. Therefore, based on these [i.e., dependency and neglect] Orders[,] I think the issue of severe abuse has been established and that [Mother] is estopped from claiming that it's not.

DCS later introduced a certified copy of the criminal court judgment in which Mother pleaded guilty to aggravated assault. The judgment does not name the victim, but Mother testified during the termination of parental rights hearing that the victim was Derrix. The remaining evidence at the termination of parental rights hearing tended to establish the best interests of the children.

By order entered January 12, 2011, the trial court terminated Mother's parental rights based on the two following grounds:

> Pursuant to Tennessee Code Annotated section 36-1-113(g)(4),

---

[10](...continued)
ascertain why both orders were introduced. Nevertheless, we refer to the orders singularly because this appeal does not involve Deandre H., and, as stated, the orders are identical.

[11]As noted above, Mother appealed this order on November 12, 2010, and her appeal is currently pending before this Court. *See supra* note 7.

the Court finds by clear and convincing evidence that [Mother] has been found to have committed severe child abuse as defined in 37-1-102 against a child who is the subject of the termination petition.

Pursuant to Tennessee Code Annotated section 36-1-113(g)(5), the Court finds by clear and convincing evidence that [Mother] has been sentenced to more than two (2) years' imprisonment for conduct that is severe child abuse against a child who is the subject of the petition.

The trial court specifically found that grounds for terminating Mother's parental rights were not proven under Tennessee Code Annotated Sections 36-1-113(g)(1) or 36-1-113(g)(3), and these alleged grounds are not at issue on appeal. The trial court then determined that it was in the best interest of the children that Mother's rights be terminated and awarded guardianship of the children to DCS.

## II. Issues Presented

Mother timely appealed from this judgment on January 5, 2011.[12] We have been presented with the following issues for review, which we restate as follows:

1. Whether the trial court erred in precluding evidence of severe child abuse as *res judicata* by relying on a dependency and neglect finding entered on the first day of the termination of parental rights hearing.

2. Whether clear and convincing evidence supports the termination of Mother's parental rights based on her prison

---

[12] Initially, the order appealed was not a final judgment under Tennessee Rules of Civil Procedure Rule 54.02 because the Petition to Terminate Parental Rights of one of the Fathers, Erron L., had not yet been adjudicated. This Court entered an order on March 18, 2011, requiring Mother either to obtain a final judgment or to show cause why her appeal should not be dismissed. Accordingly, the trial court entered a Final Judgment Order pursuant to Rule 54.02. Mr. L.'s parental rights were terminated on March 7, 2011. Thus, all claims have been adjudicated, and the order appealed is a final judgment. *See* Tenn. R. App. P. 3(a).

Also, we note that while Mother's notice of appeal was prematurely filed, we treat it as being "filed after the entry of the judgment from which the appeal is taken and on the day thereof." Tenn. R. App. P. 4(d).

sentence.[13]

3. Whether the trial court erred in finding clear and convincing evidence that terminating Mother's parental rights was in the best interests of her children?

## III. <u>Analysis</u>

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tennessee Rules of Appellate Procedure Rule 13(d). As to the trial court's findings of fact, our review

---

[13]On appeal, DCS raised this issue, as we restate from its appellate brief. We note that DCS prevailed on this issue in the trial court, and DCS's brief does not assert any error by the trial court. Nevertheless, our decision herein necessitates that we discuss this issue in detail below.

is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court, or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See McCaleb*, 910 S.W.2d at 415; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

Mother argues on appeal that the trial court erred by excluding evidence of severe child abuse under the doctrine of *res judicata*. As noted above, the trial court determined that the issue had been fully litigated in the *de novo* dependency and neglect hearing, which had been held in the circuit court the day before. Consequently, the trial court did not permit the parties to relitigate the issue in the parental rights termination hearing.

"The doctrine of *res judicata*, also referred to as claim preclusion, bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009) (citing *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987); *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 834–35 (Tenn. 2007)). *Res judicata* applies when "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions[,] and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990) (citing *Lillard v. Yellow Mfg. Acceptance Corp.*, 263 S.W.2d 520, 524 (Tenn. 1953)).

Collateral estoppel, also referred to as issue preclusion, is a species of *res judicata*. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009); *C.O. Christian & Sons Co. v. Nashville P.S. Hotel, Ltd.*, 765 S.W.2d 754, 756 (Tenn. Ct. App. 1988). Generally, the rule of collateral estoppel states that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim." *C.O. Christian & Sons Co.*, 765 S.W.2d at 756 (quoting Restatement (Second) of Judgments § 27 (1982)).

Both *res judicata* and collateral estoppel promote "finality in litigation, prevent

inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." *Creech*, 281 S.W.3d at 376 (citations omitted); *see also* **State v. Thompson**, 285 S.W.3d at 848. Our Supreme Court has summarized the distinctions between the two related doctrines as follows:

> The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

*Massengil*, 738 S.W.2d at 631.

Importantly, both *res judicata* and collateral estoppel require a final judgment from which to take their preclusive effect.[14] **State v. Thompson**, 285 S.W.3d at 847; **Richardson v. Tennessee Bd. of Dentistry**, 913 S.W.2d 446, 459 (Tenn. 1995).

Determining what constitutes a "final judgment" can be an elusive task because that term is used in two closely related senses. In the first sense, a judgment is final "'when it decides and disposes of the *whole* merits of the case leaving nothing for the further judgment of the court.'" **Richardson**, 913 S.W.2d at 460 (quoting **Saunders v. Metro. Gov't of Nashville & Davidson Cnty.**, 383 S.W.2d 28, 31 (Tenn. 1964)). For example, an order denying a motion for summary judgment or denying a motion to dismiss would not be a final judgment because the suit remains for disposition. **Id.** (citations omitted). An appellate court's jurisdiction is limited to such final judgments. Tenn. R. App. P. 3(a); **Smith v. Potter**, No. M2008-01483-COA-R3-CV, 2009 WL 1162583, at *4 (Tenn. Ct. App. Apr. 28, 2009). This is because "[i]n the absence of an express direction of the court to the contrary, a judgment that disposes of only some of the claims, issues, or parties is not a final judgment and is subject to revision by the court at any time before the entry of a final judgment adjudicating all claims and the rights and liabilities of all parties." **Creech**, 281 S.W.3d at 377 (citing Tenn. R. Civ. P. 54.02; Tenn. R. App. P. 3(a)).

---

[14]We note that, in this case, the parties refer to the doctrines of *res judicata* and collateral estoppel interchangeably. While the trial court phrased its decision using the term *res judicata*, it would appear to this Court that the issue is, in fact, one of collateral estoppel. Nevertheless, it is clear that the trial court used the term *res judicata* in its general sense to mean "'a matter adjudged; a thing judicially acted upon or decided.'" *See* **Richardson v. Tennessee Bd. of Dentistry**, 913 S.W.2d 446, 459 n.11 (Tenn. 1995) (quoting Black's Law Dictionary 1174 (5th ed. 1979)). We will use the term *res judicata* in this general sense for the remainder of this opinion.

Generally, "a trial court's judgment becomes final thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion." *Id.* (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); Tenn. R. App. P. 4(a)-(c)); *see also McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991). Before that time, the judgment lies "within the bosom of the court" and "may be set aside or amended on motion of a party or upon the court's own motion." *McBurney*, 816 S.W.2d at 34. It is in this slightly different, but substantially related, sense of a final judgment in which the doctrine of *res judicata* is implicated here. This Court has referred to this as the concept of "final completion." *Swift v. Campbell*, 159 S.W.3d 565, 573 (Tenn. Ct. App. 2004); *see also* Lawrence A. Pivnick, Tennessee Circuit Court Practice § 27:9 n.22 (2010). In this sense, then, a judgment may be considered "final" in order to confer jurisdiction on an appellate court pursuant to Tennessee Rules of Appellate Procedure Rule 3(a), while not being "final" for purposes of *res judicata* because such an appeal is pending.

This is, in fact, the rule in Tennessee, where a "'a judgment is not final and *res judicata* where an appeal is pending.'" *Creech*, 281 S.W.3d at 377-78 (quoting *McBurney*, 816 S.W.2d at 34); *see also* *Freeman v. Marco Transp.* **Co.**, 27 S.W.3d 909, 913 (Tenn. 2000). Our Supreme Court, citing the Restatement (Second) of Judgments § 13 cmt. f, has noted that Tennessee's rule is a minority position and that the predominant view in other jurisdictions is that the "taking of an appeal does not affect the finality of a judgment for *res judicata* purposes." *Creech*, 281 S.W.3d at 378 n.17 (collecting cases from other jurisdictions). However, it is an inescapable conclusion that, in Tennessee, a judgment from a case in which an appeal is pending is not final and cannot be *res judicata* until all appellate remedies have been exhausted.[15]

This issue has arisen before in the context of parental rights termination cases relying on earlier findings of dependency and neglect and severe child abuse. In *State Department of Human Services v. Tate*, No. 01-A-01-9409-CV-00444, 1995 WL 138858, at *1 (Tenn. Ct. App. Mar. 31, 1995), this Court reviewed a judgment terminating the parental rights of a mother to ten of her twelve children. The juvenile court found the children to be dependent

---

[15]*See generally* **Humphreys v. BIC Corp.**, 923 F.2d 854, 1991 WL 4705 (6th Cir. 1991). In **Humphreys**, the United States Sixth Circuit Court of Appeals was faced with the question of whether a verdict from a Tennessee state court pending appeal was *res judicata* in a federal action. *Id.* at *1. After concluding that Tennessee law did not directly address the question, the court looked to the Federal Rules of Civil Procedure for guidance. *Id.* at *3. The court ultimately concluded that the state court judgment was not final and that the trial court prematurely relied upon it as *res judicata*. *Id.* Nevertheless, the court remanded the federal action to the district court pending resolution of the state court action. *Id.* at *4. The court was of the opinion that the error in relying on *res judicata* was only realized if the state court action was reversed on appeal. *Id.* We cannot agree that such a result is in keeping with the current development of Tennessee law or the practicalities of our case.

and neglected based in part on its finding of severe child abuse by the mother. *Id***.** at *5. The circuit court affirmed this finding in a *de novo* hearing. *Id***.** In the later termination proceeding, the circuit court held that the previous finding of severe child abuse was *res judicata*. *Id***.** However, the circuit court's application of *res judicata* was based on the fact that the mother did not appeal the previous finding of severe child abuse. *Id***.** In affirming the judgment of the trial court, this Court stated that:

> We are of the opinion the circuit court did not err in finding that the doctrine of *res judicata* barred the defendant from challenging the prior findings of severe child abuse. Defendant had a full and fair opportunity to litigate this issue in the prior suit. The defendant chose not to appeal the court's order in the prior action, and, therefore, the finding of severe child abuse is a final decision, which the defendant is barred from challenging.

*Id***.**

Likewise, *In re Heaven L.F.*, 311 S.W.3d 435 (Tenn. Ct. App. 2010), contains a similar factual scenario. In that case, a mother appealed the termination of her parental rights to her four children, which relied on an earlier finding of dependency and neglect and severe child abuse. *Id***.** at 437. The juvenile court had found the children to be dependent and neglected and found that both the mother and father had committed severe child abuse. *Id***.** On *de novo* review, the circuit court affirmed both findings. *Id***.** Both parents appealed to this Court, and, by our decision entered on February 4, 2009, we affirmed the circuit court's finding "that both parents had committed severe child abuse and that the children were dependent and neglected." *Id***.** (*see In the Matter of H.L.F.*, 297 S.W.3d 223 (Tenn. Ct. App. 2009)). The father did not appeal our decision, and we noted that, at that point, our decision that the father had committed severe child abuse became a final judgment. *Id***.** The mother, on the other hand, sought permission to appeal to the Tennessee Supreme Court, which was denied on June 15, 2009. *Id***.** In a later trial, which was the subject of *In re Heaven L.F.*, 311 S.W.3d 435, both the mother's and the father's parental rights were terminated, and the mother appealed, asserting that the trial court erred in finding the issue of whether she committed severe child abuse was *res judicata*. *Id***.** at 439. On appeal, we determined that "the order finding that Mother had committed severe child abuse became a final, non-appealable judgment on June 15, 2009," (i.e., the date on which her application for permission to appeal to the Supreme Court was denied). *Id***.** Thus, we concluded that the issue was properly *res judicata*. *Id***.** at 439-40.

In both *Tate* and *In re Heaven L.F.*, the underlying judgment was final and *res*

*judicata* because the parent had exhausted his or her appellate remedies, either by a failure to appeal or by a denial of permission to appeal.[16] No such finality exists in the instant case. Here, the dependency and neglect *de novo* hearing, in which the finding of severe child abuse was made by Judge Williams, had been held the day before the termination hearing began; and the resulting order was entered the morning of the first day of the termination hearing. Presently, Mother's dependency and neglect case is on appeal to this Court. Given this fact, we must conclude that while the dependency and neglect order may well have been admissible in the termination hearing, the issues decided therein were not *res judicata*, and the trial court erred in giving them preclusive effect.[17] We must next determine the effect of this error.

From our review of the transcript, the trial court ascertained that the finding of severe child abuse made by Judge Williams was sufficient to establish a ground for termination under Tennessee Code Annotated Section 36-1-113(g)(4). The trial court then allowed DCS to introduce the criminal court judgment in which Mother pleaded guilty to aggravated assault in order to establish an alternative ground for termination under Tennessee Code Annotated Section 36-1-113(g)(5). We will discuss each ground in turn.

Tennessee Code Annotated Section 36-1-113(g)(4) provides a ground for termination of parental rights where:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home

---

[16]*See also* **Tennessee Dep't of Children's Servs. v. Hoffmeyer**, No. M2002-00076-COA-R3-JV, 2003 WL 1092779 (Tenn. Ct. App. Mar. 13, 2003). In **Hoffmeyer**, the juvenile court entered an order upon DCS's petition for temporary custody finding the children to be victims of severe child abuse and dependent and neglected. *Id.* at *4-5. When DCS later petitioned to terminate parental rights, it sought to introduce the prior order as conclusively establishing severe child abuse as a ground for termination. *Id.* at *6-8. The juvenile court concluded that the issue of severe child abuse was *res judicata*. *Id.* On appeal, we concluded that the juvenile court's prior order was interlocutory in nature and not a final judgment. *Id.* at *8. Consequently, we held that *res judicata* could not be applied and vacated the judgment terminating parental rights. *Id.*

[17]Mother has raised no issue as to the admissibility of the dependency and neglect order in the termination hearing; therefore, we do not address this issue.

of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4).

As excerpted above, the trial court held, pursuant to section 36-1-113(g)(4), that Mother "has been found to have committed severe child abuse as defined in 37-1-102." The trial court's statements from the bench make clear that it was relying on the finding by Judge Williams that the children were victims of severe child abuse pursuant to section 37-1-102(b)(23)(A). As already discussed, the trial court could not properly rely on Judge Williams's order as *res judicata* because it was not yet final. Consequently, under the circumstances of this case and the express statutory language, the trial court was required to make an independent finding that Mother committed severe child abuse. Such a finding would require that evidence and argument be allowed on the matter, which the trial court expressly precluded. We must, therefore, conclude that the trial court erred in finding a ground for termination based upon section 36-1-113(g)(4).

As an alternative ground, the trial court found that Mother's parental rights should be terminated pursuant to section 36-1-113(g)(5), which provides that termination is warranted where:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102.

Tenn. Code Ann. § 36-1-113(g)(5).

It is well settled in Tennessee that only one of the statutory grounds must be proven in order to establish sufficient grounds for termination of parental rights. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We have already established that the trial court erred in applying *res judicata* to section 36-1-113(g)(4). However, if the trial court's finding that section 36-1-113(g)(5) established an independent ground for termination was made without reliance on *res judicata*, then we must nevertheless affirm.

At first blush, it appears that Mother's conviction for aggravated assault could suffice

-13-

as an independent ground for termination under section 36-1-113(g)(5). She was, after all, sentenced to six years' imprisonment for aggravated assault, the victim of which she testified was her son, Derrix. A close reading of section 36-1-113(g)(5), however, reveals otherwise. That statute requires that the sentence of imprisonment be "for conduct against the child . . . that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102." Tenn. Code Ann. § 36-1-113(g)(5). Thus, a criminal conviction for aggravated assault, standing alone, is not a sufficient ground for termination under section 36-1-113(g)(5). Rather, some court order, either by a prior court or the court hearing the termination petition, must find that the conduct underlying the conviction constituted severe child abuse as defined by section 37-1-102.

In this case, Judge Williams, in the dependency and neglect hearing, made the finding that Mother's conduct constituted severe child abuse under section 37-1-102(b)(23)(A).[18] However, as discussed in detail above, such a finding was not *res judicata* because the order was not final. As a result, the trial court in the termination proceeding could not simply adopt the findings of Judge Williams, but was required instead to make an independent finding that the conduct underlying Mother's conviction constituted severe child abuse.

For the foregoing reasons, we conclude that both grounds upon which the trial court based its decision to terminate Mother's parental rights were tainted by its application of *res judicata* regarding the issue of severe child abuse. Because the trial could not rely upon the order of the dependency and neglect court, which was still interlocutory in nature, to conclusively establish a finding of severe child abuse, it was required to make its own findings. We concede that the trial court's order of January 12, 2011, *supra*, could conceivably be read to make such independent findings, particularly with regards to section 36-1-113(g)(5). However, in order to make such findings, the trial court must have heard evidence on the issue. Here, the trial court specifically excluded all evidence and argument on the issue of severe child abuse. Thus, any finding the trial court purportedly made on that issue necessarily relied on Judge Williams's previous finding of severe child abuse, which was not a final judgment for purposes of *res judicata*.

We have thoroughly reviewed the evidence in the record. While there is some evidence from which a trial court could conclude that Mother committed severe child abuse (i.e., Mother's conviction for aggravated assault and her testimony that Derrix was the victim), such a finding cannot be reached without providing Mother an opportunity to assert a defense on that issue. As we have stated, the trial court could not simply adopt the order

---

[18]We note that the criminal court judgment did not make such a finding. Also, while the juvenile court made such a finding in its order of July 7, 2009, *supra*, that finding is part of the dependency and neglect proceeding which is currently on appeal to this Court. *See supra* notes 7 and 11.

of the dependency and neglect court given its non-final nature. And it could not reach its own conclusion on the issue because it had precluded any relevant evidence or argument. The trial court simply cannot give preclusive effect to a non-final order, thereby preventing Mother from presenting a defense on an issue which, given the procedural posture of the case, required litigation in the trial court.

As this Court has stated, "[a] biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Giorgianna H.*, 205 S.W.3d 508, 515 (Tenn. Ct. App. 2006) (footnotes omitted) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001)); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). "No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996); *In re Knott*, 197 S.W. 1097, 1098 (Tenn. 1917); *In re D.D.K.*, No. M2003–01016–COA–R3–PT, 2003 WL 23093929, at *8 (Tenn. Ct. App. Dec. 30, 2003)). Given the grave importance of this fundamental right, our State has provided that the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d at 653. Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653.

We conclude that the clear and convincing evidence standard was not met where Mother was erroneously prevented from asserting her defense on the crucial grounds at issue. In *Conner v. Conner*, No. W2007-01711-COA-R3-CV, 2008 WL 2219255, at *3 n.3 (Tenn. Ct. App. May 29, 2008), this Court noted that in cases adjudicating important interests, such as those involving parental rights, the right to present evidence is fundamental to due process. We have stated before that "we place decrees forever terminating parental rights in the category of cases in which the state may not bolt the door to equal justice." *Tennessee Dep't of Children's Servs. v. Hoffmeyer*, No. M2002-00076-COA-R3-JV, 2003 WL 1092779, at *9 (Tenn. Ct. App. Mar. 13, 2003) (citations and internal quotations omitted). Under the unique procedural circumstances of this case, it was incumbent upon the trial court to allow Mother to fully litigate whether she committed severe child abuse sufficient to provide grounds for termination under Tennessee Code Annotated Sections 36-1-113(g)(4)-(5).

## IV. Conclusion

-15-

For the foregoing reasons, we vacate the judgment and remand this case to the trial court for further proceedings consistent with this Opinion. All other issues are pretermitted. Costs of this appeal are taxed to Appellee, State of Tennessee, Department of Children's Services, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE